IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| POLARIS POWERLED TECHNOLOGIES, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG ELECTRONICS CO., LTD., SAMSUNG DISPLAY CO., LTD., <br><br> *Defendants*. | § § § § § § § § § § § § § § § CIVIL ACTION NO. 2:22-CV-00469-JRG |

**MEMORANDUM OPINION AND ORDER**

### I. INTRODUCTION

Before the Court is the Motion to Sever and Stay Proceedings as to U.S. Patent No. 7,259,521 (the "Motion") filed by Defendants Samsung Electronics America, Inc., Samsung Electronics Co., Ltd., and Samsung Display Co., Ltd. ("Samsung"). (Dkt. No. 55). In the Motion, Samsung requests that the Court sever and stay proceedings related to U.S. Patent No. 7,259,251 pending the final written decision of the IPR instituted on that patent. (*Id.* at 1).

### II. BACKGROUND

Polaris Powerled Technologies, LLC ("Polaris" or "Plaintiff") filed this lawsuit on December 12, 2022, accusing Samsung of infringing U.S. Patent No. 7,259,521 (the "'521 Patent"), U.S. Pat. No. 8,217,887 (the "'887 Patent"), and U.S. Pat. No. 8,740,456 (the "'456 Patent") (collectively, the "Asserted Patents"). *See* (Dkt. No. 1). Subsequent to the filing of the present case, Samsung filed *inter partes* review ("IPR") petitions against each of the Asserted Patents. *See* (Dkt. No. 55 at 1). The Patent Trial and Appeal Board ("PTAB") declined to institute

IPR on the '887 Patent and the '456 Patent. However, on October 16, 2023, the PTAB instituted an IPR against all asserted claims of the '521 Patent. (*Id.*).

In the Motion, Polaris moves to sever and stay the portion of the above-captioned case related to the '521 Patent ("Count I") until after the PTAB issues its final written decision on that patent. (*Id.*).

### III. LEGAL STANDARD

The district court has the inherent power to control its own docket, including the power to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). How to best manage the court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). A stay of proceedings pending *inter partes* review of a patent is particularly justified when "the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues." *Evolutionary Intelligence, LLC v. Millennial Media, Inc.*, No. 5:13-cv-4206-EJD, 2014 WL 2738501 (N.D. Cal. June 11, 2014); *see also 3rd Eye Surveillance, LLC v. Stealth Monitoring, Inc.*, No. 6:14-cv-162-JDL, 2015 WL 179000, at *1 (E.D. Tex. Jan. 14, 2015).

"District courts typically consider three factors when determining whether to grant a stay pending *inter partes* review of a patent in suit: (1) whether the stay will unduly prejudice the nonmoving party, (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set, and (3) whether the stay will likely result in simplifying the case before the court." *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-cv-1058-WCB, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015). "Based on th[ese] factors, courts determine whether the benefits of a stay outweigh the inherent costs of postponing resolution of the litigation." *Id.* Federal Rule of Civil Procedure 21 "provides a district court broad

2

discretion" to sever any claim against a party. *Content Guard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-cv-1112-JRG, 2015 WL 1263346, at *2 (E.D. Tex. Mar. 19, 2015) (internal quotation omitted).

IV. **ANALYSIS**

Samsung argues that "[t]he accused AMOLED displays manufactured by [Defendant Samsung Display Co., Ltd. ("SDC")] are implicated only by Polaris's allegations of infringement of the '521 Patent asserted in Count I of the complaint," and that the remaining Counts II and III "are directed to different product features and device components that SDC does not manufacture," justifying the severance of Count I from the remainder of this case. (Dkt. No. 55 at 1). Samsung summarizes the various counts as follows:

| Complaint Count | Asserted Patent | Asserted Claims | Purported Technology | Accused Component/Feature |
|---|---|---|---|---|
| Count I | '521 Patent | 1, 2, 3, 5, 7 | Driver for AMOLED Pixels | AMOLED displays in Samsung smartphones, tablets, and laptops |
| Count II | '887 Patent | 1, 4, 7, 11, 13, 15 | Backlight Control | Backlights for LCD displays in Samsung televisions and monitors |
| Count III | '456 Patent | 1–13 | Wireless Charging | Wireless charging of Samsung smartphones |

(*Id.* at 2). Samsung further argues that all three factors this Court considers in deciding whether to stay a case for a pending instituted IPR favor staying Count I. (*Id.*).

In response, Polaris argues that "there is substantial overlap between the products accused of infringing the '521 patent and [the '456 Patent]," and that "the overwhelming majority of infringement and damages for the '456 and '521 patents relate to the same product line, the Galaxy S line of phones." (Dkt. No. 57 at 1). As such, Polaris contends that the prejudice and simplification

3

factors weigh heavily against severing and staying Count I and that the stage of the case factor weighs neutrally. *See* (*id.* at 13–14).[1]

After reviewing the parties' briefing, and for the reasons described below, the Court finds that severing and staying Count I is not appropriate.

### 1. The Early Stage of This Case Slightly Favors a Stay

Samsung argues that as of the time of filing the Motion, "the vast majority of work for the parties and nearly all critical deadlines lie ahead, weighing significantly in favor of a stay." (Dkt. No. 55 at 7).[2] According to Samsung, "[f]act discovery is in its early stages, and will continue for more than seven months; expert discovery will not close for nearly nine[;] … this Court will not hold its *Markman* hearing until April 9, 2024[;] [a]nd trial is still over one year away." (*Id.*). Specifically, Samsung argues that "[Defendant] SDC, in particular, would save significant resources as it is not implicated in the other counts of Polaris' complaint, and would be removed entirely from the case." (*Id.*). Finally, Samsung notes that it filed the present Motion "just 11 days after the IPR institution decision for the '521 Patent," further justifying a stay of Count I. (*Id.* at 8).

Polaris argues that this factor should weigh neutrally as "[t]he parties served initial disclosures and have exchanged infringement and invalidity contentions under Patent Rules 3-1 to 3-4[,] [t]he parties have served multiple sets of interrogatory responses and produced over half a million pages of documents[,] and Polaris' experts have spent many days analyzing source code produced by Samsung related to the accused products." (Dkt. No. 57 at 13).

---

[1] The parties intertwine their arguments for severing and staying Count I, and the severance is necessarily premised on a stay being imposed, so the Court addresses the severance in tandem with the request for a stay.
[2] In analyzing this Motion, the Court considers the stage of the case as of the filing of the Motion. *See Uniloc 2017 LLC v. Samsung Elecs. Am., Inc.*, No. 2:19-cv-00259-JRG-RSP, 2020 WL 1433960, at *5 (E.D. Tex. Mar. 24, 2020) ("When considering a motion to stay, the filing date of the motion is the proper time to measure the stage of litigation.").

In reply, Samsung argues that "the source code and most of the documents [Polaris] has reviewed, and its inspections, relate to the other two patents in suit, not the '521 patent." (Dkt. No. 61 at 5). As a result, Samsung concludes that "a stay of Count I is appropriate and would save substantial resources and reduce the burdens on the parties and the Court," and that "SDC, in particular, would save significant resources as it would be removed entirely from the case." (*Id.*).[3]

In sur-reply, Polaris contends that "Samsung ignores the cases cited by Polaris from this District establishing that the stage of the case factor is neutral at this juncture, where the parties have served infringement and invalidity contentions, initial disclosures, document productions, and interrogatory responses." (Dkt. No. 65 at 5).

For the following reasons, the Court finds that this factor weighs slightly in favor of a stay. The inquiry under this factor is "whether the proceedings before the Court have reached an advanced stage." *NFC Tech.*, 2015 WL 1069111, at *2. Here, discovery has begun, and the parties have served their contentions under Patent Rules 3-1, 3-2, 3-3, and 3-4. This Court, and other courts in this district, have regularly found similarly situated cases to be sufficiently developed such that this factor weighs neutrally in the stay analysis. *See, e.g.*, *KIPB LLC v. Samsung Elecs. Co.*, No. 2:19-cv-00056-JRG-RSP, 2019 WL 6173365, at *4 (E.D. Tex. Nov. 20, 2019) (finding the stage of the case factor neutral where "P.R. 3-3 and 3-4 Disclosures have already been disclosed and the parties have served initial disclosures and additional disclosures"); *EON Corp. IP Holdings, LLC v. Sensus USA Inc*, No. 6:09-cv-116-JDL, 2009 WL 9506927, at *4 (E.D. Tex. Dec. 18, 2009) (finding the stage of the case factor neutral where the parties had "begun the discovery process and [Plaintiff] has completed its P.R. 3-1 and 3-2 disclosures"). Furthermore, in this case

---

[3] Polaris disputes that a severance and stay of Count I would have the effect of removing SDC from this case, as "SDC is pertinent to both the '521 patent and U.S. Patent No. 8,217,887 (''887 patent') as SDC has a role in the design and manufacture of components for televisions pertinent to the '887 patent." (Dkt. No. 65 at 3).

5

inspections and substantial document productions—including the production "over half a million pages of documents"—have already occurred.

While Defendants cite cases where courts in this district ultimately issued a stay pending resolution of instituted IPRs, in most of those cases the court did not find the stage of the case to be sufficiently early such that this factor weighed in favor of granting a stay. *See, e.g.*, *Emed Techs. Corp. v. Repro-med Sys., Inc.*, No. 2:15-cv-1167-JRG-RSP, 2016 WL 2758112, at *2 (E.D. Tex. May 12, 2016) ("In light of the stage of the case and the parties' conduct, the Court finds that this factor is neutral."); *NFC Tech.*, 2015 WL 1069111, at *4 ("In sum, the state of the proceedings is neutral or, at most, cuts slightly against the issuance of a stay.").[4] While *Markman* has yet to occur, and trial is not until October 28, 2024, this is not an incipient case, as evidenced by the parties' disclosures and substantial document productions.[5] Nonetheless, the Court recognizes that Defendants filed this Motion only eleven days after the IPR institution decision for the '521 Patent, and that many important case deadlines lie in the future. Ultimately, in view of the stage of this case and taking into account Defendants' diligence in filing this Motion, the Court finds that this factor weighs slightly in favor of staying Count I.

## 2. The Stay Will Not Simplify Issues Before the Court

Samsung argues that "to promote judicial efficiency, the Court should sever Count I from this case to allow the PTAB to develop the complete intrinsic record for the '521 Patent, and

---

[4] In the remaining case cited by Samsung, this Court found that "on balance [the stage of the case] concerns are about equal" but ultimately concluded that "[t]his factor weighs slightly in favor of a stay" in part because of Defendants' diligence in seeking the stay. *Scorpcast, LLC v. Boutique Media*, No. 2:20-cv-00128-JRG-RSP, 2021 WL 3514751, at *3 (E.D. Tex. June 8, 2021).

[5] While Samsung argues that "the source code and most of the documents [Polaris] has reviewed, and its inspections, relate to the other two patents in suit, not the '521 patent" (Dkt. No. 61 at 5), Samsung provides no further information or explanation in support of this statement. In any event, the Court would expect that "most" of the discovery in this case would relate to the other two out of three patents; that other patents and allegations exist in this case, however, does not diminish the work done with respect to the '521 Patent.

potentially dispose of Count I." (Dkt. No. 55 at 4). Samsung contends that "Count I relates to a distinct set of factual and legal issues, and is the only count that implicates defendant SDC," meaning that "[s]everance therefore would not only promote judicial efficiency by avoiding work that is likely to be unnecessary, it would also streamline the proceedings significantly by removing one of the parties." (*Id.*).[6] Samsung argues that "[s]hould the PTAB invalidate all challenged claims, a stay will have saved the parties significant cost, time, and resources, particularly since nothing in the severed case will remain to be tried." (*Id.* at 9). Samsung further argues that "a stay will simplify this litigation regardless of the final disposition of the IPR because the IPR proceedings will likely narrow the scope of the claims and the disputed facts and will give this Court the benefit of the expert agency's full and focused consideration of the effect of prior art." (*Id.* (internal quotation omitted)). In such a case, Samsung contends that "Polaris will be limited through estoppel and/or disclaimer to the positions it took during IPR proceedings." (*Id.*). Ultimately, Samsung concludes that "[w]ithout a stay, the Court will almost certainly need to revisit claim construction to account for the '521 Patent's new prosecution history, likely on the literal eve of trial." (*Id.* at 10).

In response, Polaris argues that this factor weighs strongly against a stay because "[a]n IPR has been instituted on **only one patent**" out of the three patents asserted in this case, and "[t]he trial date in this case begins with jury selection on October 28, 2024, whereas the final written decision in the '521 patent IPR is due around the same time on October 16, 2024." (Dkt. No. 57 at

---

[6] Polaris contends that "Samsung's assertion that Defendant Samsung Display Co., Ltd. ('SDC') would be removed from the case is speculative and uncertain," because "SDC is pertinent to both the '521 patent and U.S. Patent No. 8,217,887 … as SDC has a role in the design and manufacture of components for televisions pertinent to the '887 patent." (Dkt. No. 65 at 3). With only the parties' conflicting representations as to whether SDC is relevant to any part of this case other than Count I, the Court is unpersuaded that severing and staying Count I would necessarily "streamline the proceedings significantly by removing one of the parties." (Dkt. No. 55 at 4). The Court further notes that Defendant SDC is a subsidiary within the same corporate conglomerate as the other Defendants. (Dkt. No. 65 at 3).

4). Specifically, Polaris contends that "severing of the '521 patent as Samsung requests would result in tremendous inefficiencies for the parties and the Court," as "the Court would now be burdened with having to engage in two separate claim construction proceedings and two separate trials rather than handling all the patents-in-suit together in a single case." (*Id.* at 5). Polaris further argues that "the IPR will ***not*** result in a significant reduction of the validity issues in this case regarding the '521 patent," because "[w]hile Samsung may be estopped from asserting the nine prior art references in its invalidity contentions, this is dwarfed by the 16 prior art products, seven grounds of indefiniteness, seven grounds of lack of enablement, and seven grounds of lack of written description that are not subject to review by the PTAB." (*Id.* at 6).

Furthermore, Polaris argues that "[a]ny alleged unpatentability of the asserted claims [1, 2, 3, 5, and 7 of the '521 Patent] is highly speculative" because "[t]he Board has found substantial factual issues to resolve as to every asserted ground in the IPR." (*Id.* at 8). Polaris notes that the only IPR grounds that the PTAB found to have a reasonable likelihood of success "do ***not*** address asserted claims 3 and 5 making these claims very likely to be found patentable." (*Id.*). Polaris summarizes the IPR grounds as follows:

| Ground | Claims | 35 U.S.C. § | References |
|--------|--------|-------------|------------|
| 1 | 1, 2, 7 | 102 | Kim |
| 2 | 1, 2, 7 | 103(a) | Kim |
| 3 | 1, 2 | 102 | Hayafuji |
| 4 | 1-3, 5 | 103(a) | Hayafuji |
| 5 | 1-4 | 103(a) | Steer |

(*Id.* at 7). With respect to Ground 4, which addresses both claims 3 and 5, Polaris highlights that "the Board declare[d] [the] 'Patent Owner's contentions may have merit and [that the Board has] some doubt that Petitioner ultimately will establish sufficient motivation to make the modification proposed.'" (*Id.* at 9 (quoting Dkt. No. 55-2 at 51)). Polaris argues that, "[b]ecause [Ground 4] is the *only* ground addressing asserted claim 5, it is highly likely claim 5 will be unaffected by the

8

IPR and will be litigated in the district court." (*Id.*). Ultimately, Polaris concludes that "[i]f the claims relating to the '521 patent were severed and stayed, this would result in the significant inefficiencies of a second claim construction proceeding, a second round of summary judgment and pretrial motions, and a second trial involving the same parties and many of the same products." (*Id.*).

In reply, Samsung argues that "this case is already divided into two essentially separate cases involving different patents, technologies, parties, and lead counsel," reducing any inefficiencies that would result from severing and staying Count I. (Dkt. No. 61 at 2). "Importantly," Samsung contends, "if Count I remains, the Court will likely need to reconsider claim construction for the '521 Patent on the eve of trial in view of the fully developed IPR record." (*Id.*). Samsung argues that this "would, in turn, also affect expert reports, summary judgment and other pre-trial motions." (*Id.*). Finally, Samsung contends that even if all the challenged claims are not invalidated, "any surviving claims will very likely have been narrowed due to the statements that Polaris has made, and will make, in the IPR, which will simplify issues for trial." (Dkt. No. 61 at 4).

In sur-reply, Polaris first argues that "because an IPR has only been instituted on *one* of the three patents-in-suit and the products accused of infringing that patent are also accused of infringing another patent in the case (*e.g.*, overlapping products, discovery and evidence), the Court should follow its long-standing practice of finding this factor weighs against a stay." (Dkt. No. 65 at 1). Polaris next argues that "Samsung's allegations that . . . the Court will have to reconsider claim construction, expert reports, and pretrial motions [are] plainly not credible." (*Id.* at 2). Specifically, Polaris notes that "[t]he Court is not bound by the Board's claim constructions, and the parties have *not* proposed construing any terms in the IPR." (*Id.*). Polaris further notes that

9

"if stayed, the parties will be burdened with duplicative damages and technical discovery on the Galaxy S phones, which are the main accused products for both the '521 patent and U.S. Patent No. 8,740,456." (*Id.* at 3–4).

For the following reasons, the Court finds that this factor weighs against staying Count I. Whether a stay "will result in simplification of the issues before a court is viewed as the most important factor when evaluating a motion to stay." *Uniloc USA, Inc. v. Acronis, Inc.*, No. 6:15-cv-01001-RWS-KNM, 2017 WL 2899690, at *3 (E.D. Tex. Feb. 9, 2017) (citing *Intellectual Ventures II LLC v. Kemper Corp.*, No. 6:16-cv-81-JRG, 2016 WL 7634422, at *2 (E.D. Tex. Nov. 7, 2016); *NFC Tech.*, 2015 WL 1069111, at *4).

In assessing this factor, it is critical to consider the likelihood that the PTAB will ultimately invalidate the challenged claims. Here, the PTAB found that petitioner had "demonstrated a reasonable likelihood that claims 1, 2, and 7 are unpatentable under 35 U.S.C. § 102 or § 103(a) over Kim" under Grounds 1 and 2. (Dkt. No. 55-2 at 38). For Grounds 3, 4, and 5, the PTAB did not find an independent likelihood of success to justify institution; rather, the PTAB instituted on these grounds based solely on the finding of a likelihood of success on Grounds 1 and 2. (*Id.* at 38, 48, 52). The PTAB further noted throughout its institution decision that for each ground, "the parties' arguments raise fact-intensive issues that are best resolved on a complete record," indicating that even for the claims subject to Grounds 1 and 2 invalidation is not a foregone conclusion. *See, e.g.*, (*id.* at 52). In addition, and of particular importance, the PTAB expressed skepticism regarding petitioner's likelihood of success on Ground 4—the only ground challenging asserted claim 5—stating that the PTAB has "some doubt that Petitioner will establish sufficient motivation to make the modification proposed." (*Id.* at 51, 52 (noting further that "even if a person of ordinary skill in the art 'could' modify Hayafuji to remove the ripple component extraction

10

circuit, that does not inform us that a person of ordinary skill in the art 'would' make these changes").

Given that the PTAB has indicated a likelihood of success only for asserted claims 1, 2, and 7—not asserted claims 3 and 5—and especially in light of the PTAB's skepticism regarding Ground 4, it seems possible, and in fact likely, that claim 5 (if not other asserted claims) will survive the IPR proceedings. As such, the Court finds that severing and staying Count I will likely result in the inefficient duplication of this case, including much of the work and expense of the parties, as well as the efforts to be expended by the Court. *Cf. RFCyber Corp. v. Google LLC*, No. 2:20-cv-274-JRG, Dkt. No. 201 (E.D. Tex. Jan 4, 2022) ("Samsung's offer to withdraw its Motion to Stay with respect to the non-instituted [patents] would in effect require the Court to hold two entirely separate trials—potentially more than a year apart—when considering both the instituted and non-instituted patents. Such an approach would create significant inefficiencies that would more than offset any simplification gained through the IPR process.").

The Court is unpersuaded by Samsung's argument that this case is "already divided into two essentially separate cases," simply because it involves "different patents, technologies, parties." (Dkt. No. 61 at 2). Many cases before this Court contain allegations spanning different patents, technologies, and parties. In such cases, it is often most efficient to resolve the diverse allegations together in the same action instead of creating numerous distinct cases for every different accused technology, patent, or party.[7] Such is also the case for the present action. With "at least 40 percent of the products accused of infringing the '521 patent . . . also accused of infringing the '456 patent," (Dkt. No. 57 at 3), and the fact that "the overwhelming majority of infringement and damages for the '456 and '521 patents relate to the same product line" (*id.* at 1),

---

[7] Likewise, the fact that certain aspects of the case may be handled by different lead counsel is not a sufficient reason to justify severance of those portions of the case.

11

it would be far more efficient to resolve the allegations related to the '521 Patent in this action. If the Court severed the claims related to the '521 Patent, the parties would have to engage in duplicative damages and technical discovery for the overlapping accused products. Moreover, the Court and the parties would be burdened with the inefficiencies that result from doubling the necessary claim construction, pre-trial, and trial proceedings.

The Court is also unpersuaded by Samsung's argument that "without a stay, additional claim construction proceedings for the '521 Patent prior to trial, as well as expert report updates, and revised summary judgment and other pre-trial motions, would be unavoidable." (Dkt. No. 61 at 2, 5). Samsung provides no example of such a last-minute reconsideration of a district court's *Markman* order being necessitated by the issuance of a PTAB final written decision. The same is true for the remainder of Samsung's parade of horribles—indeed, the Court is unaware of any instance in which a final written decision that issued on the eve of trial required an entire reworking of the pre-trial process with "expert report updates, and revised summary judgment and other pre-trial motions." (*Id.*). To the contrary, the issuance of the final written decision will likely result in an occurrence common on the eve of trial—namely, claim narrowing, with Polaris dropping any claims found invalid at the PTAB. Furthermore, the Court finds it far too speculative to assume that any sort of disclaimer or estoppel-worthy conduct will occur during the IPR proceedings, particularly where the parties have proposed no terms for construction in the IPR.

Accordingly, for the reasons explained herein, the Court finds that this factor weighs against a stay of Count I.

### 3. The Stay Will Unduly Prejudice Polaris

Samsung argues that severing and staying Count I will not cause undue prejudice to Polaris. Specifically, Samsung argues that because "Samsung and Polaris do not compete in any relevant

market," Polaris necessarily "will not suffer customer loss or injury to market share as a result of a stay, and a stay will not dimmish the monetary damages to which it will be entitled if it succeeds in its infringement suit." (Dkt. No. 55 at 6 (internal quotation omitted)). Samsung further argues that "Polaris's failure to move for a preliminary injunction is additional evidence that it would suffer no undue prejudice." (*Id.*). Finally, Samsung contends that "there is no tactical or strategic disadvantage to Polaris that would result from a stay of this litigation," because "a stay will likely simply the issues in this case . . . , it will benefit both sides by affording an opportunity to conserve time and resources and avoid potentially moot discovery, as well as other significant work on the case." (*Id.* at 7 (internal quotation omitted)).

In response, Polaris argues that "[t]his factor weighs strongly against a stay as Polaris would be prejudiced by a long, potentially multi-year delay in enforcing its patent rights with regard to the '521 patent," which "is true even if the plaintiff is a non-practicing entity or in the licensing business." (Dkt. No. 57 at 10). Polaris contends that "[a] stay of the '521 patent could result in more than a 3-year delay in resolution of Polaris' claims on the '521 patent," as "[t]he final written is due in just under 1 year on October 16, 2024[,]" which "can be extended by up to 6 months to April 2025," followed by "[a] Federal Circuit appeal [that] would add an additional 1-1.5 years," and finally "the case would need to begin again in district court, which could likely take another year to get to trial." (*Id.*). Polaris further argues that "beyond delay, Samsung's request to sever and stay litigation as to the '521 patent would be unduly prejudicial to Polaris because Polaris would have to litigate two separate cases," requiring "the expense of two trials, additional claim construction proceedings, a second set of summary judgment and pretrial motions, and incurring many duplicative expenses through the process." (*Id.* at 11).

13

In reply, Samsung argues that "delay [is] inherent in granting a stay" and thus cannot be "sufficient, standing alone, to defeat a stay motion." (Dkt. No. 61 at 4). Regarding the severance of Count I, Samsung contends that "this case is already divided into two essentially separate cases involving different patents, technologies, parties and lead counsel," and that "[t]he complexity of combining two different matters into one case can be streamlined and sorted out by separating these discrete matters." (*Id.* at 5). Samsung concludes that "even assuming some claims survive the IPR, a stay of Count I is more efficient, and less prejudicial, because without a stay, additional claim construction proceedings for the '521 Patent prior to trial, as well as expert report updates, and revised summary judgment and other pre-trial motions, would be unavoidable." (*Id.*).

In sur-reply, Polaris rejects Samsung's argument that having the '521 Patent in the present case is the same as having it in a second distinct litigation. Namely, Polaris argues that "[i]f the motion to stay is denied and the three patents remain together, the Court only has to undertake claim construction, pre-trial motions, and trial ***once***," but "if the '521 patent is stayed, the Court must indisputably do all of these ***twice***, which is an inefficient use of *judicial* resources." (Dkt. No. 65 at 4). Polaris further argues that staying Count I would also waste the parties' resources because "Polaris will have to undertake duplicative discovery on damages and the overlapping accused products as well as the additional expense and burden of a second trial." (*Id.*).

For the following reasons, the Court finds that this factor weighs against staying Count I. While Samsung is correct that the mere delay caused by a stay is not *ipso facto* sufficient to show undue prejudice where the parties are not competitors, that does not preclude such prejudice from occurring under the specific facts of this case.[8] Indeed, because Samsung seeks to sever one third

---

[8] Likewise, the mere fact that Polaris did not seek a preliminary injunction does not mean that Polaris is incapable of experiencing undue prejudice if Count I were to be stayed. *See, e.g.*, *3rd Eye Surveillance, LLC*, 2015 WL 179000, at *2 ("[T]he fact that 3rd Eye did not to seek a preliminary injunction does not automatically rule out the possibility that it will suffer prejudicial harm if a stay is granted."); *Chrimar Sys., Inc. v. ADTRAN, Inc.*, No. 6:15-cv-00618-JRG,

14

of this case and set it on a separate track, the Court finds that a likelihood of undue prejudice exists. *Cf. TQ Delta, LLC v. CommScope Holding Co., Inc.*, No. 2:21-cv-00309-JRG, 2022 WL 16720195, at *2 (E.D. Tex. Nov. 4, 2022) (finding that this factor weighed against a partial stay because such a stay could "subdivide the case without material benefit," prejudicing the parties through the attendant delay and additional expenses that would necessarily result from a second, delayed trial on any surviving patent claims). Doing as Samsung requests would ensure that if any claims survived the IPR proceeding—which as previously discussed is likely—the Court and the parties would have to undertake duplicative actions, including redundant damages and technical discovery on overlapping accused products, two separate claim construction hearings, two pre-trial conferences, and two trials. Such a multiplication of this proceeding would unnecessarily drive up the costs and efforts required to adjudicate Polaris's patent rights, resulting in undue prejudice to Polaris.

For the reasons discussed above (*see supra* Part IV.2), the Court is unpersuaded by Samsung's argument that this case is "already divided into two essentially separate cases" simply because it involves "different patents, technologies, parties." (Dkt. No. 61 at 5). Similarly, as also previously explained (*see supra* Part IV.2), the Court is unconvinced by Samsung's argument that "without a stay, additional claim construction proceedings for the '521 Patent prior to trial, as well as expert report updates, and revised summary judgment and other pre-trial motions, would be unavoidable." (Dkt. No. 61 at 5). Samsung cites no prior occurrence of such a last-minute reworking of a district court's rulings due to the issuance of a PTAB final written decision. The Court sees no reason to expect that such remedial action would be necessary in this case if the

---

2016 WL 11746525, at *1 (E.D. Tex. Dec. 28, 2016) ("Defendants' argument suggests that only those parties who seek injunctions could ever experience undue prejudice from the delay of the final resolution of their case. This cannot be the case.").

15

Court were to deny Samsung's Motion. Indeed, it appears the action guaranteed to result in duplicative proceedings before the Court would be to grant Samsung's request to sever and stay Count I.

As such, the Court finds that severing and staying Count I and trying it as a separate case (assuming any asserted claims survive the IPR) would unduly prejudice Polaris by forcing it to take on the efforts and expense of two cases, including two separate claim construction hearings, two pre-trial conferences, and two trials, as well as duplicative damages and technical discovery. Accordingly, for the reasons explained herein, the Court finds that this factor weighs against a stay of Count I.

## V. CONCLUSION

Having found that the stage of the case factor slightly favors a stay of Count I and that the simplification and undue prejudice factors disfavor a stay of Count I, the Court is of the opinion that the Motion should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 15th day of March, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE