**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

POLARIS POWERLED TECHNOLOGIES, LLC,

Plaintiff,

v.

SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG DISPLAY CO., LTD.,

Defendants.

Civil Action No. 2:22-cv-00469-JRG

**JURY TRIAL DEMANDED**

**PLAINTIFF'S OPPOSED MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS**

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 4

III. LEGAL STANDARD ........ 5

IV. ARGUMENT ........ 6

A. Good Cause Exists For Polaris to Amend Its Infringement Contentions Regarding ’456 Patent to Add Source Code Citations ........ 6

1. The Explanation for Failure to Meet the Deadline Factor Weighs in Favor of Granting Polaris Leave to Amend Its Infringement Contentions ........ 6

2. The Importance of What the Court Would Exclude Factor Weighs in Favor of Granting Polaris Leave to Amend Its Infringement Contentions ........ 11

3. The Potential Prejudice in Allowing the Amendment Factor Weighs in Favor of Granting Polaris Leave to Amend Its Infringement Contentions ........ 11

4. The Availability of a Continuance Factor Weighs in Favor of Granting Polaris Leave to Amend Its Infringement Contentions ........ 13

B. Good Cause Exists For Polaris to Add Samsung’s Newly Released 2024 Products to Its Infringement Contentions for the ’456 Patent ........ 13

1. Samsung Does Not Oppose Polaris’ Motion for Leave to Amend to Add the Galaxy S24 Series Phones ........ 13

2. The Explanation for Failure to Meet the Deadline Factor Weighs in Favor of Granting Polaris Leave to Amend Its Infringement Contentions to Add Products Released in 2024 . 13

3. The Importance of What the Court Would Exclude Factor Weighs in Favor of Granting Polaris Leave to Amend Its Infringement Contentions to Add Products Released in 2024 . 14

4. The Potential Prejudice In Allowing the Amendment Factor Weighs in Favor of Granting Polaris Leave to Amend Its Infringement Contentions to Add Products Released in 2024 ........ 15

5. The Availability of a Continuance Factor Weighs in Favor of Granting Polaris Leave to Amend Its Infringement Contentions to Add Products Released in 2024 ........ 15

V. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Cases**

*Alacritech Inc. v. CentutryLink, Inc.*,
No. 2:16-cv-00693-RWS-RSP, (E.D. Tex. Sept. 29, 2017) ..................... 11

*Cutting Edge Vision, LLC v. TCL Tech. Grp. Corp.*,
No. 6:22-cv-00285-ADA, 2023 WL 4002539 (W.D. Tex. June 14, 2023) ..................... 13, 15

*Fleet Connect Sols. LLC v. Waste Connections US, Inc.*,
No. 2:21-cv-00365-JRG, (E.D. Tex. May 17, 2022) ..................... 13, 15

*GREE, Inc. v. Supercell Oy*,
No. 2:19-cv-00311-JRG-RSP, 2020 WL 76988312 (E.D. Tex. Dec. 28, 2020) ..................... 13, 14

*Keranos, LLC v. Silicon Storage Tech., Inc.*,
No. 2:13-cv-00017-RWS-RSP, 2018 WL 574867 (E.D. Tex. Jan. 26, 2018) ..................... 6

*MacLean-Fogg Co. v. Eaton Corp.*,
No. 2:07-cv-472, 2008 WL 4601476 (E.D. Tex. Oct. 6, 2008) ..................... 11

*Mass Engineered Design*, *Inc. v. Ergotron, Inc.*,
No. 2:06-cv-00272, 2008 WL 1930299(E.D. Tex. Apr. 30, 2008) ..................... 14, 15

*MedioStream, Inc. v. Microsoft Corp.*,
No. 2:08-cv-00369-CE, (E.D. Tex. Oct. 18, 2010) ..................... 12

*Polaris PowerLED Techs., LLC v. Samsung Elecs. Am., Inc.*,
No. 2:17-cv-00715-JRG, 2019 WL 11585349 (E.D. Tex. Apr. 24, 2019) ..................... 14

*Thomas Swan & Co. v. Finisar Corp.*,
No. 2:13-cv-00178-JRG, 2014 WL 12599219 (E.D. Tex. Aug. 11, 2014) ..................... 11

*Traxcell Techs., LLC v. AT&T Corp.*,
No. 2:17-cv-00718-RWS-RSP, 2018 WL 6078202 (E.D. Tex. Nov. 21, 2018) ..................... 12

Rules

E.D. Tex. Pat. L.R. 3-6(a) ..................... 6

E.D. Tex. Pat. L.R. 3-6(b) ..................... 6

## I. INTRODUCTION

Plaintiff Polaris PowerLED Technologies, LLC ("Polaris") hereby moves for leave to serve Second Supplemental Infringement Contentions for U.S. Patent No. 8,740,456 ("'456 patent). A copy is attached as Exhibits 23-26, with redlined versions attached as Exhibits 27-30. Specifically, Polaris makes two types of amendments. First, Polaris seeks to add three new accused products, the Galaxy S24, S24+, and S24 Ultra phones, that were recently released on January 31, 2024. Polaris could not have added these to its original contentions in May 2023 or its supplemental contentions in November 2023 as these products had not yet been released. The addition of these products is important for damages and to conserve judicial resources. If these products are not added to the case, then Polaris would need to file a second lawsuit to litigate infringement of these products, which would be an inefficient use of judicial resources. Defendants Samsung Electronics America, Inc., Samsung Electronics Co., Ltd., and Samsung Display Co., Ltd. (collectively "Samsung") would not be prejudiced by the addition of these three phones, which have the same infringing functionality as the currently accused Samsung smartphones. No continuance is necessary. Therefore, good cause exists for this amendment. Samsung does not oppose this amendment to add the Galaxy S24, S24+, and S24 Ultra phones as accused products.

Second, Polaris seeks to amend its contentions to add source code citations for the accused products. Polaris accuses Samsung's Wireless PowerShare feature of infringing the '456 patent. The Wireless PowerShare feature allows a person to use the battery in Samsung's phone to charge another phone or device (e.g., earphones, smartwatch, etc.) by placing the devices in contact with one another as shown in the picture below. The Wireless PowerShare feature involves complex interactions between the software that control aspects of the wireless charging feature and a network of interconnected hardware including thermistors for detecting temperature, coil assemblies, an applications processor power management integration chip, and other

microprocessors that are involved in the wireless charging functionality of Wireless PowerShare.




Ex. 1[1], POL_SS_00001268.

The claims of the '456 patent are directed to the intersection of both software and hardware components to allow wireless charging without overheating or damaging the devices involved.

> 9. A device, comprising:
>
> a connection coupling a first device and a second device;
>
> a first port of the first device, wherein the first port is configured to receive a first connector of the connection;
>
> first logic of the first device coupled to the first port, wherein the first logic is configured to determine a temperature of the connection at the first connector;
>
> second logic of the first device, wherein the second logic is configured to provide current to the second device over the connection;
>
> a second port of the second device, wherein the second port is configured to receive a second connector of the connection;
>
> third logic of the second device coupled to the second port, wherein the third logic is configured to determine a temperature of the connection at the second connector;
>
> wherein, in response to the greater of the change in temperature determined by the first logic and the change in temperature determined by the third logic being above a threshold, the second logic is configured to reduce the current being provided from the first device to the second device.

Ex. 2 ('456 patent), claim 9.

A complete understanding of the operation of the Wireless PowerShare feature in Samsung's products as it relates to the '456 patent is not possible without detailed knowledge of

---

[1] All exhibits ("Ex.") are attached to the Declaration of Ryan Dooley filed concurrently herewith.

***both*** the hardware and software involved in the Wireless PowerShare functionality. Declaration of Dr. David Ricketts ("Ricketts Decl."), ¶¶ 15-19. As Polaris' technical expert, Dr. Ricketts, testifies, the hardware schematics that Samsung refused to produce until March 7, 2024, were crucial to understanding the source code because the hardware schematics are required to understand which sensors and sensor signals correspond to the signals in the source code. *Id*. at ¶¶ 17-19.

However, Samsung did not produce the necessary circuit-level hardware schematics for any accused product until March 7, 2024, when it produced the circuit-level hardware schematic for a single accused product. Samsung did not identify any circuit-level hardware schematics in its interrogatory responses until March 12, 2024. Polaris and its expert spent the next several weeks analyzing the source code in light of the newly produced hardware schematic to fully understand the operation of the source code in relation to the Wireless PowerShare feature as it relates to the '456 patent. Declaration of Ryan Dooley ("Dooley Decl."), ¶ 4; Ricketts Decl., ¶ 19. This was a complicated task that took several weeks as Samsung produced more than *41 million source code files* for the '456 accused products despite less than 1,200 files (i.e., 0.003%) being relevant across all of the currently accused products.

After Polaris finished its analysis, it provided a draft of the amended contentions with the new source code citations to Samsung on March 25, 2024. After Samsung informed Polaris that it opposed the amendment on April 2, Polaris diligently filed the present motion 9 days later.

Good cause exists for the source code amendments. Because the circuit-level diagrams were not produced until March 7, 2024, Polaris could not have made the specific citations to source code that it now seeks to add any earlier because it did not have the necessary circuit-level hardware schematics that are required to correlate the sensors and signals in the hardware with the signals in the source code. Ricketts, ¶ 16-19. Despite seeking these documents since June 2023 in letters, meet and confers, and interrogatories, Samsung refused to produce the necessary circuit-

level hardware schematics until March 7, 2024. Therefore, any delay is of Samsung's own making as it should have produced the circuit-level hardware schematics for the accused products earlier in discovery, but chose not to do so. The source code cited in the amendment are important evidence of infringement. Samsung is not prejudiced by the amendment caused by its own refusal to produce the circuit-level hardware schematics for its accused products. No continuance would be necessary. The discovery cut off is June 4, 2024. Trial is set for the end of October 2024.

For these reasons, the Court should grant Polaris' motion for leave to amend its infringement contentions.

## II. BACKGROUND

On May 16, 2023, Polaris served its disclosure of asserted claims and infringement contentions pursuant to E.D. Texas Patent Local Rule 3-1 identifying the Wireless PowerShare functionality in the accused products as infringing the '456 patent. The accused products included several models in the Galaxy, Galaxy Note, Galaxy Flip, and Z Fold lines of phones. Pursuant to the Discovery Order 3(a)(i), Polaris served its First Supplemental Infringement Contentions on November 20, 2023 to add source code pursuant to its initial analysis. Dkt. 44, 2. Samsung's production of source code comprised 4,660 gigabytes of text and over 41 million source code files. Polaris was unable to perform a complete review of the code without circuit-level hardware diagrams, which Samsung did not produce until March 7, 2024.

On June 20, 2023, Polaris specifically requested the production of source code, as well as documents relating to the operation of the software, and hardware diagrams showing how the hardware components involved in the accused Wireless PowerShare functionality are connected. Ex. 3 at 4-5. Also, on June 20, 2023, Polaris served Interrogatory No. 17, which stated, "For each Accused Product that includes Wireless PowerShare, identify all components in the Accused Product that are related to the Wireless PowerShare feature." Ex. 4 at 7. Samsung invoked Rule 33(d) in its response to Interrogatory No. 17, and refused to produce any circuit-level hardware

diagrams showing the arrangement of components involved in the Wireless PowerShare feature. Ex. 5 at 36-37.

Polaris repeatedly wrote letters and met and conferred with Samsung's counsel to obtain production of the circuit-level hardware diagrams for the accused products, but Samsung would not agree to produce these documents. Ex. 18 at 6-7, Ex. 19 at 2, Ex. 20 at 2-4, Ex. 21 at 4-5, Ex. 22 at 3-5. Given Samsung's refusal to produce the circuit-level hardware diagrams, Polaris diligently sought this same information through a second interrogatory served on December 15, 2023, Interrogatory No. 22, which states: "Separately for each Samsung product identified in response to Interrogatory No. 16, identify documents sufficient to: (a) Show the circuit diagram of the wireless charging element, and (b) Show the circuit diagram of all temperature sensors present in the product." Ex. 6 at 4. Again, Samsung did not produce any circuit-level hardware diagrams. Ex. 11 at 39-40, Ex.12 at 10-11.

On March 7, 2024, Samsung finally produced a circuit-level hardware diagrams for a single accused product. Samsung's production remains deficient, and Polaris will continue meeting and conferring with Samsung to get the same circuit-level hardware diagrams for all of the remaining accused products. Polaris then analyzed the source code in view of this circuit-level hardware diagram and amended its contentions to add new source code citations.

Samsung released the Galaxy S24, S24+, and S24 Ultra products on January 31, 2024. These are all newer versions of previously accused Galaxy products that have the accused Wireless PowerShare feature. Polaris seeks to add these new products to the infringement contentions.

## III. LEGAL STANDARD

Local Patent Rule 3-6(b) states: "Amendment or supplementation of any Infringement Contentions or Invalidity Contentions, other than as expressly permitted in P. R. 3-6(a), may be made only by order of the Court, which shall be entered only upon a showing of good cause." E.D. Tex. Pat. L.R. 3-6(b). Courts consider four factors when determining whether the movant has

shown good cause to amend its infringement contentions: "(1) the explanation for the party's failure to meet the deadline, (2) the importance of what the court is excluding, (3) the potential prejudice if the court allows that thing that would be excluded, and (4) the availability of a continuance to cure such prejudice." *Estech Sys., Inc. v. Target Corp.*, No. 2:20-cv-00123-JRG-RSP, 2020 WL 4883920 (E.D. Tex. Aug. 20, 2020). "'Good cause' is established when the balance of the four factors weigh in favor of allowing the amendment." *Keranos, LLC v. Silicon Storage Tech., Inc.*, No. 2:13-cv-00017-RWS-RSP, 2018 WL 574867, at *2 (E.D. Tex. Jan. 26, 2018), objections overruled, 2018 WL 11446159 (E.D. Tex. Feb. 27, 2018).

## IV. ARGUMENT

### A. Good Cause Exists For Polaris to Amend Its Infringement Contentions Regarding '456 Patent to Add Source Code Citations

#### 1. The Explanation for Failure to Meet the Deadline Factor Weighs in Favor of Granting Polaris Leave to Amend Its Infringement Contentions

Polaris requests that the Court grant leave to amend to add source code citations to Polaris' infringement contentions regarding the '456 patent based on the production of circuit-level hardware schematics produced on March 7, 2024, and updated interrogatory responses served on March 12, 2024. The citations to source code in the current amendment could not have been included in Polaris' original contentions on May 16, 2023, because the source code had not yet been produced. As explained in detail below, any delay in Polaris amending its infringement contentions to add the source code citations is due to Samsung's refusal to provide circuit-level hardware schematics and documentation regarding the software that performs the accused Wireless PowerShare functionality.

Polaris has been diligent in seeking discovery of hardware diagrams showing the configuration and communication between the hardware involved in the Wireless PowerShare feature. At the beginning of discovery, Polaris sent a June 20, 2023 letter requesting that Samsung produce "Documents and source code that show the operation of Wireless PowerShare in Samsung

phones . . . including: [] Hardware diagrams and design documents for every Samsung phone capable of Wireless PowerShare." Ex. 3 at ¶ 20. Polaris reiterated its request for these hardware schematics on September 15, 2023, including further details and requests for documents relating to "hardware diagrams and design documents for every Samsung phone capable of Wireless PowerShare," "How temperature is measured by a Charging Phone, including all temperature sensors, hardware logic, and software, and the purposes of each measured temperature," and "How and when temperatures at the charging Phone and Receiving Phone are compared to each other." Ex. 18 at ¶ 20.

In January 2024, Samsung responded to Polaris' letters by pointing to a small set of incomplete documents that were *not* the circuit-level hardware schematics that Polaris requested and needed in order to be able to learn what signals are being sent between the hardware components so that those signals could be found and traced in the source code. Ex. 8 at 1-2. As late as February 28, 2024, Samsung was still refusing to produce any circuit-level hardware diagrams showing the components involved in the Wireless PowerShare functionality. Ex. 9 at section II.A; Ex. 10. Rather, Samsung incorrectly argued that "the antenna coils are the only hardware components relevant to Polaris's '456 Patent allegations" and refused to provide schematics showing the other relevant components like the applications processor power management integrated circuit ("AP PMIC"). Ex. 9 at section II.A; Ex. 10 at 4. ("Further, AP PMIC schematics are not relevant to Polaris's '456 Patent claims.").

Given Samsung's refusal to produce the relevant hardware schematics showing the connections and signals between the hardware components, Polaris diligently pursued this same information simultaneously through interrogatories. On June 20, 2023, Polaris served Interrogatory 17 stating, "For each Accused Product that includes Wireless PowerShare, identify all components in the Accused Product that are related to the Wireless PowerShare feature." Ex. 4

at 7. An answer to Interrogatory 17 would have facilitated Polaris' understanding of the code because Polaris would have been able to understand the components present in each phone involved in sensing and comparing temperatures, such as thermistors, wireless power ASICs, AP PMICs, and microprocessors in order to identify and trace the relevant temperature signals in the source code. Ricketts Decl., ¶¶ 18-20. However, to avoid providing a substantive narrative response, Samsung responded on July 21, 2023, citing Rule 33(d) but identifying zero documents. Ex. 5 at 36-37. Its first supplemental response on December 18, 2023, Samsung again failed to cite any circuit-level hardware schematics because it had not produced any such schematics at that time. Ex. 11 at 39.

Given Samsung's outright refusal to provide the necessary circuit-level schematics of the hardware involved in the accused functionality of Wireless PowerShare, Polaris diligently attempted to obtain this information again with a second interrogatory, Interrogatory No. 22, that was served on December 15, 2023. Interrogatory No. 22 states: "Separately for each Samsung product identified in response to Interrogatory No. 16, identify documents sufficient to: (a) Show the circuit diagram of the wireless charging element, and (b) Show the circuit diagram of all temperature sensors present in the product." Ex. 6 at 4. In response, Samsung again failed to produce or identify any circuit-level schematics for the accused products. Rather, Samsung's January 16, 2024, response simply asserted Rule 33(d) and cited the same nonresponsive documents as its December 18, 2023 response to Interrogatory No. 17. Ex. 12 at 11; Ex. 11 at 39.

Meanwhile, while refusing to produce circuit-level diagrams of the hardware layout of the accused products and documents relating the software implementation of Wireless PowerShare, Samsung produced 4,660 gigabytes of source code containing ***over 41 million different source code files*** (i.e., 41,078,625 files). However, across all accused products for which source code has been produced, less than about 1200 source code files are actually relevant to the '456 patent and

cited in Polaris' infringement contentions. Therefore, the relevant source code files for Wireless PowerShare comprise only about 0.003% of the total files produced by Samsung. In other words, the less than 1200 relevant source code files were buried among more than 41 million irrelevant source code files making the source code difficult and time-consuming to review.

Further, given the absence of documents relating to the software for Wireless PowerShare and circuit-level diagrams showing the hardware components of the accused products, it was not possible to fully identify and understand the operation of the source code. Ricketts Decl., ¶¶ 16-19. Therefore, while Polaris updated its infringement contentions on November 20, 2023, Polaris did not have a complete understanding of the source code because it lacked the circuit-level hardware schematics needed to identify the relevant sensors and signals in the hardware and trace the corresponding signals in the source code. *Id*.

The most important information that Polaris needed to understand the source code was the circuit-level schematics showing the interconnections of the hardware in the accused products that perform Wireless PowerShare. *Id*. The circuit-level hardware schematics were essential for understanding the operation of the source code because the complete hardware schematics include the identification of signal names which appear in the source code and without a full trace of the thermistors and their related signals, Polaris' expert, Dr. Ricketts, could not confirm how the source code operated on the relevant signals to control the various components. *Id*.

Despite requesting information regarding the circuit-level hardware schematics since June 2023 and through Interrogatory Nos. 17 and 22, Samsung repeatedly refused to produce the basic circuit-level diagrams for the accused products arguing that it was not relevant and unnecessary because Samsung had already produced source code. Ex. 10 at 4. After several meet and confers, Samsung finally produced a complete circuit-level diagram for only one of the accused products on March 7, 2024 and updated its responses to Interrogatory Nos. 17 and 22 to identify the circuit-

level hardware diagram on March 12, 2024. Ex. 13 at 42-43, Ex. 7 at 11-12. While Samsung's production of the circuit-level hardware diagrams is still incomplete as to all accused products, the one circuit-level diagram that Samsung produced on March 7, 2024 allowed Polaris' expert to understand what specific components are involved in the accused Wireless PowerShare functionality, how those components interact with each other, and what the relevant signals are in the source code. Ricketts Decl., ¶¶ 16-19; Ex. 13 at 42-43. Polaris and Dr. Ricketts could not have formed a complete understanding of the source code without having the circuit-level hardware diagrams, which Samsung identified for the first time in its responses to Interrogatory Nos. 17 and 22 on *March 12, 2024*. Ricketts Decl., ¶¶ 16-19, Ex. 13 at 42-43, Ex. 7 at 11-12.

After reviewing the one circuit-level diagram produced by Samsung on March 7 and its updated responses to Interrogatories 17 and 22 on March 12, 2024, Polaris diligently worked with Dr. Ricketts over the next few weeks to identify and trace the relevant sensors and signals in the hardware and to identify the correct corresponding signals in the source code. Dooley Decl., ¶ 4; Ricketts Decl., ¶ 19. Updated contentions containing the new source code citations were provided to Samsung on March 25, 2024. Dooley Decl., ¶ 4. On April 2, 2024, Samsung informed Polaris that it would oppose a motion to amend its infringement contentions regarding the '456 patent to add source code citations. Ex. 14. Polaris then prepared and filed this motion.

Any delay in moving to amend the infringement contentions for the '456 patent is the fault of Samsung, who refused to produce fundamental technical documents like circuit-level diagrams for the accused products for nearly nine months from June 2023 to March 2024 thereby preventing Polaris from forming a complete understanding of the source code for the accused Wireless PowerShare feature. Further, after obtaining a circuit-level diagram, time was needed to analyze and review the *over 41 million source code files* to find the correct source code, which courts have recognized. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-cv-00693-RWS-RSP, (E.D. Tex. Sept.

29, 2017), ECF 369 at 4, fn.2. ("Given the amount of source code Intel produced in March, it would have taken some time to identify the accused functionalities" in reference to a production of only 150,000 source code files).

Where a delay has resulted from requesting additional discovery, it favors granting leave to supplement. *MacLean-Fogg Co. v. Eaton Corp.*, No. 2:07-cv-472, 2008 WL 4601476, at *2 (E.D. Tex. Oct. 6, 2008). That is the case here where Polaris diligently pursued discovery of the circuit-level diagrams for the accused products, and diligently moved to amend its contentions within weeks of receiving a circuit-level hardware diagram.

Therefore, this factor weighs heavily in support of granting Polaris' motion for leave to amend its infringement contentions with regard to the '456 patent.

### 2. The Importance of What the Court Would Exclude Factor Weighs in Favor of Granting Polaris Leave to Amend Its Infringement Contentions

In light of newly produced circuit-level hardware schematics for an accused product, the additional source code citations in Polaris' Second Supplemental Infringement Contentions for the '456 Patent are vitally important to a fair and equitable resolution of this litigation because it provides important evidence regarding what source code in the accused products provides the infringing Wireless PowerShare functionality and how the software in the accused products implements the accused Wireless PowerShare functionality. The source code thus provides a crucial means by which Polaris can prove infringement and is "undoubtedly important." *Thomas Swan & Co. v. Finisar Corp.*, No. 2:13-cv-00178-JRG, 2014 WL 12599219, at *2 (E.D. Tex. Aug. 11, 2014) (finding that an amendment relating to "an alternate means to prove infringement" is "undoubtedly important").

Therefore, this factor weighs heavily in support of granting Polaris' motion for leave to amend its infringement contentions with regard to the '456 patent.

### 3. The Potential Prejudice in Allowing the Amendment Factor Weighs in Favor of Granting Polaris Leave to Amend Its Infringement Contentions

The prejudice to Samsung from the addition of source code citations is non-existent to minimal. Samsung has been on notice that the Wireless PowerShare functionality in its phones is accused of infringement since the initial filing of the Complaint. Dkt. 1, ¶¶ 73-106. Any prejudice is of Samsung's own making. Despite Polaris requesting the production of circuit-level hardware diagrams for the accused products and serving Interrogatory No. 17 requesting information about hardware in the accused products in June 2023, Samsung has intentionally delayed producing any circuit-level hardware diagrams for the accused products for nearly nine months until March 2024.

If Samsung had not delayed in providing Polaris' with basic circuit-level hardware diagrams about its products, these amendments to add source code citations could have occurred much earlier. Because any prejudice to Samsung is a result of its own "slow production," this factor weighs in favor of granting leave to amend Polaris' infringement contentions. *MedioStream, Inc. v. Microsoft Corp.*, No. 2:08-cv-00369-CE, (E.D. Tex. Oct. 18, 2010), ECF No. 468 at 5 ("[A]ny prejudice suffered by [defendant] is a result of its own slow production. Accordingly, the Court finds that this factor weighs in favor of granting leave to amend.").

Furthermore, Samsung has repeatedly asked Polaris to supplement its '456 Infringement Contentions to provide more specific allegations. Ex. 10 at 4, Ex. 15 at 3-5, Ex. 16 at 2-3; Dooley Decl., ¶ 3. This Court has found that, when the defendant raises concerns with specificity of infringement contentions, as Samsung has done here, this factor weighs in favor of granting a motion for leave to amend. *Traxcell Techs., LLC v. AT&T Corp.*, No. 2:17-cv-00718-RWS-RSP, 2018 WL 6078202, at *3 (E.D. Tex. Nov. 21, 2018) ("Upon Defendants request for more specificity, Plaintiff acted reasonably by amending its Initial Infringement Contentions with respect to [accused product]").

Therefore, this factor also weighs heavily in support of granting Polaris' motion for leave to amend its infringement contentions with regard to the '456 patent.

#### 4. The Availability of a Continuance Factor Weighs in Favor of Granting Polaris Leave to Amend Its Infringement Contentions

No scheduled deadlines or hearing would need to be continued if the amendment is allowed. This Court has found that this factor has weighed in favor of amendment in similarly situated cases around the claim construction stage. *Fleet Connect Sols. LLC v. Waste Connections US, Inc.*, No. 2:21-cv-00365-JRG, (E.D. Tex. May 17, 2022), ECF No. 53 at 9; *Cutting Edge Vision, LLC v. TCL Tech. Grp. Corp.*, No. 6:22-cv-00285-ADA, 2023 WL 4002539, at *3 (W.D. Tex. June 14, 2023). Therefore, this factor similarly weighs in support of granting Polaris' motion for leave to amend its infringement contentions with regard to the '456 patent.

### B. Good Cause Exists For Polaris to Add Samsung's Newly Released 2024 Products to Its Infringement Contentions for the '456 Patent

#### 1. Samsung Does Not Oppose Polaris' Motion for Leave to Amend to Add the Galaxy S24 Series Phones

When the parties met and conferred on April 3, 2024, Samsung stated that it did not oppose Polaris amending its infringement contentions for the '456 patent to add the Galaxy S24, S24+, and S24 Ultra products (collectively, the "Galaxy S24 series phones"). Dooley Decl., ¶ 5.

#### 2. The Explanation for Failure to Meet the Deadline Factor Weighs in Favor of Granting Polaris Leave to Amend Its Infringement Contentions to Add Products Released in 2024

Polaris moves for leave to amend its infringement contentions to add the Galaxy S24 series phones to its '456 infringement contentions. "The Court has routinely held that a patentee has good cause to amend its infringement contentions to include newly accused products that the defendant introduced to the market after the plaintiff served its initial infringement contentions." *GREE, Inc. v. Supercell Oy*, No. 2:19-cv-00311-JRG-RSP, 2020 WL 7698831, at *2 (E.D. Tex. Dec. 28, 2020). The Galaxy S24 series phones were released on January 31, 2024, after Polaris' May 16, 2023 initial infringement contentions and its November 20, 2023 supplemental infringement contentions, so these products could not have been accused in the prior infringement contentions. Ex. 17. Further, the Galaxy S24 series phones infringe in the same way as other accused Samsung

phones like the S23 and S22. Therefore, because the Galaxy S24 series phones were released after the initial infringement contentions, there is good cause to amend to add the Galaxy S24 series phones to Polaris' infringement contentions. *GREE*, 2020 WL 7698831, at *2.

Further, after the Galaxy S24 series phones were released, Samsung did not update its discovery responses including, for example, its responses to Interrogatory Nos. 1, 10-12, 16-18, 22-23, and 27 to identify the Galaxy S24 series phones as it was obligated to do under paragraph 8 of this case's Discovery Order and the Fed. R. Civ. P. 26(e)(1)(A). Dkt. 44. *Polaris PowerLED Techs., LLC v. Samsung Elecs. Am., Inc.*, No. 2:17-cv-00715-JRG, 2019 WL 11585349, at *4 (E.D. Tex. Apr. 24, 2019) ("Samsung's failure to comply with its obligations under Federal Rule of Civil Procedure 26(e)(1)(A) might by itself be sufficient grounds to grant Polaris' motion."); *Mass Engineered Design*, *Inc. v. Ergotron, Inc.*, No. 2:06-cv-00272, 2008 WL 1930299, at *3-4 (E.D. Tex. Apr. 30, 2008) (granting leave to amend where defendant was uncooperative as to discovery of products not explicitly listed in the original infringement contentions). Polaris has thus been diligent in seeking discovery and moving for leave to amend its infringement contentions to add the Galaxy S24 series phones as accused products.

Therefore, this factor weighs in favor of granting Polaris' motion for leave to amend its infringement contentions for the '456 patent.

#### 3. The Importance of What the Court Would Exclude Factor Weighs in Favor of Granting Polaris Leave to Amend Its Infringement Contentions to Add Products Released in 2024

If Polaris' motion as to the new products is not granted, Polaris would not be able to accuse the Galaxy S24 series phones in this case and would have to file another lawsuit to adjudicate the dispute regarding the Galaxy S24 series phones, which weighs significantly in favor of granting Polaris' motion, especially since the Galaxy S24 series phones infringes the same way as other accused products. *GREE,* 2020 WL 7698831, at *3 ("If the newly accused [product's] feature is similar to the [currently accused product's] feature already in dispute, it would be a significant

waste of judicial resources to have another case on closely related issues. As such, this factor weighs significantly in favor of granting GREE's Motion."); *Mass Engineered Design,* 2008 WL 1930299, at *3 ("If leave to amend were denied, [plaintiff] would be unable to accuse the new products of infringement. This factor weighs in favor of granting leave."). Additionally, having to litigate infringement of the Galaxy S24 series phones in a second case would be an inefficient use of judicial resources, which weighs in favor of granting leave to amend.

Therefore, this factor again weighs in favor of granting leave to amend.

### 4. The Potential Prejudice In Allowing the Amendment Factor Weighs in Favor of Granting Polaris Leave to Amend Its Infringement Contentions to Add Products Released in 2024

There is no prejudice to Samsung from adding the Galaxy S24 series phones, which have the same infringing Wireless PowerShare functionality as the currently accused Samsung smartphones. This factor thus also weighs in favor of granting leave to amend.

### 5. The Availability of a Continuance Factor Weighs in Favor of Granting Polaris Leave to Amend Its Infringement Contentions to Add Products Released in 2024

No scheduled deadlines or hearing would need to be continued if the amendment is allowed. This Court has found that this factor has weighed in favor of amendment in similarly situated cases around the claim construction stage. *Fleet Connect Sols.*, ECF No. 53 at 9; *Cutting Edge Vision*, 2023 WL 4002539, at *3.

## V. CONCLUSION

For at least the reasons mentioned above, Polaris respectfully requests that the Court grant this Motion for Leave to Amend Infringement Contentions.

April 11, 2024

Respectfully submitted,

/s/ *Robert F. Kramer*

Robert F. Kramer
CA Bar No. 181706 (Admitted E.D. Texas)
rkramer@krameralberti.com

David Alberti
CA Bar No. 220265 (Admitted E.D. Texas)
dalberti@krameralberti.com
Sal Lim
CA Bar No. 211836 (Admitted E.D. Texas)
slim@krameralberti.com
Russell S. Tonkovich
CA Bar No. 233280 (Admitted E.D. Texas)
rtonkovich@krameralberti.com
Robert Mattson (*pro hac vice*)
Virginia Bar No. 43568
rmattson@krameralberti.com
James P. Barabas (*pro hac vice*)
NJ Bar No. 018262000
jbarabas@krameralberti.com
Andrew Hamill
CA Bar No. 251156 (Admitted E.D. Texas)
ahamill@krameralberti.com
Jeremiah A. Armstrong
CA Bar No. 253705 (*pro hac vice*)
jarmstrong@krameralberti.com
Aidan Brewster
CA Bar No. 319691 (*pro hac vice*)
abrewster@krameralberti.com
Ryan Dooley
CA Bar No. 321645 (*pro hac vice*)
rdooley@krameralberti.com
KRAMER ALBERTI LIM & TONKOVICH LLP
577 Airport Blvd., Ste 250
Burlingame, CA 94010
Telephone: (650) 825-4300
Facsimile: (650) 460-8443

Deron R. Dacus
Texas Bar No. 00790533
ddacus@dacusfirm.com
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX. 75701
Telephone: (903) 705-7233
Facsimile: (903) 581-2543

*Attorneys for Plaintiff*
*Polaris PowerLED Technologies, LLC*

## CERTIFICATE OF SERVICE

I certify that the foregoing document is being served via the Court's CM/ECF system on April 11, 2024, on all counsel of record who have consented to electronic service, and all confidential versions of this filing will be served upon all counsel of record by electronic mail.

*/s/ Robert F. Kramer*
Robert F. Kramer

## CERTIFICATE OF CONFERENCE

I certify that Plaintiff has met and conferred with Defendant regarding this Motion via email on March 25, where Plaintiff asked whether Samsung would oppose a motion to add source code. Samsung responded on April 2, opposing this Motion to add source code. The parties confirmed this opposition by video conference on April 3, 2024. On April 3, 2024, Defendant also indicated they do not oppose this Motion to add new products.

*/s/ Robert F. Kramer*