IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| POLARIS POWERLED TECHNOLOGIES, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG ELECTRONICS CO., LTD., SAMSUNG DISPLAY CO., LTD.,<br><br>*Defendants*. | CIVIL ACTION NO. 2:22-CV-00469-JRG |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Opposed Motion for Leave to Amend Infringement Contentions (the "Motion") filed by Plaintiff Polaris PowerLED Technologies, LLC ("Plaintiff"). (Dkt. No. 129). In the Motion, Plaintiff moves for leave to serve Second Supplemental Infringement Contentions for U.S. Patent No. 8,740,456 (the "'456 Patent"). (*Id.* at 1). Specifically, Plaintiff seeks to: (1) "add three new accused products, the Galaxy S24, S24+, and S24 Ultra phones, that were released on January 31, 2024"; and (2) "add source code citations for the accused products." (*Id.*). Defendants' Samsung Electronics America, Inc., Samsung Electronics Co., Ltd., and Samsung Display Co., Ltd. ("Samsung" or "Defendants") do not oppose Plaintiff's addition of the Galaxy S24, S24+, and S24 Ultra phones but they do oppose Plaintiff's source code citations. (Dkt. No. 135).

### I.  BACKGROUND

On May 16, 2023, Plaintiff served its initial Infringement Contentions, identifying the Wireless PowerShare functionality in the accused products as infringing the '456 Patent. (Dkt. No.

129 at 4). On November 20, 2023, Plaintiff served its First Supplemental Infringement Contentions to add source code citations pursuant to its initial analysis of the source code produced by Samsung. (*Id.*).

On June 20, 2023, Plaintiff requested "the production of source code, as well as documents relating to the operation of the software, and hardware diagrams showing how the hardware components involved in the accused Wireless PowerShare functionality are connected." (*Id.* at 4). Plaintiff contends that it "repeatedly wrote letters and met and conferred with Samsung's counsel to obtain production of the circuit-level hardware diagrams for the accused products, but Samsung would not agree to produce these documents." (*Id.* at 5). Without success, on December 15, 2023, Plaintiff served Interrogatory No. 22, which sought this information and specifically stated:

> Separately for each Samsung product identified in response to Interrogatory No. 16, identify documents sufficient to (a) Show the circuit diagram of the wireless charging element, and (b) Show the circuit diagram of all temperature sensors present in the product.

(*Id.* (quoting Dkt. No. 129-7 at 4)). Plaintiff contends that Defendants did not produce any circuit-level hardware diagrams in response to Interrogatory No. 22. (*Id.*).

On March 7, 2024, Defendants produced SAMS362-2400385 (the "March 7th document"), a circuit-level hardware diagram for one accused product. (*Id.*). On March 12, 2024, Defendants provided updated interrogatory responses which cited circuit-level hardware schematics for the first time. (*Id.* at 3). According to Plaintiff, it analyzed the source code in view of the circuit-level hardware diagram produced on March 7, 2024 and amended its contentions to add new source code citations. (*Id.*). Plaintiff served its Second Amended Infringement Contentions on Defendants on March 25, 2024. (*Id.* at 3).

## II. DISCUSSION

Local Patent Rule 3-6(b) allows a party to amend or supplement its infringement contentions "by order of the Court, which shall be entered only upon a showing of good cause." L.R. 3-6(b). Courts consider four factors under the good cause standard: "(1) the explanation for the failure to meet the deadline; (2) the importance of the thing that would be excluded; (3) potential prejudice in allowing the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice." *Uniloc 2017 LLC v. Google LLC*, 2:18-cv-493-JRG-RSP, 2019 WL 6465318, at *1 (E.D. Tex. Dec. 2, 2019).

### A. Galaxy S24, S24+, and S24 Ultra Products

Plaintiff seeks to add three new accused products: "the Galaxy S24, S24+, and S24 Ultra phones, that were recently released on January 31, 2024." (Dkt. No. 129 at 1). Plaintiff contends that it "could not have added these to its original contentions in May 2023 or its supplemental contentions in November 2023 as these products had not yet been released." (*Id.*). Plaintiff further argues that "[t]he addition of these products is important for damages and to conserve judicial resources" because "[i]f these products are not added to the case, then Polaris would need to file a second lawsuit to litigate infringement of these products, which would be an inefficient use of judicial resources." (*Id.*). Finally, Plaintiff contends that Defendants "would not be prejudiced by the addition of these three phones, which have the same infringing functionality as the currently accused Samsung smartphones" and that no continuance is necessary. (*Id.*). Defendants do not oppose Plaintiff's request to amend its infringement contentions to add the Galaxy S24, S24+, and S24 Ultra phones. (Dkt. No. 135). Accordingly, the Court finds that good cause exists for this amendment adding the Galaxy S24, S24+, and S24 Ultra phones as accused products.

3

B.  **Source Code Additions**

1.  *Explanation for the Delay*

Plaintiff seeks to amend its infringement contentions to add additional source code citations for the accused products, which Plaintiff claims could not have been added earlier "because it did not have the necessary circuit-level hardware schematics that are required to correlate the sensors and signals in the hardware with the signals in the source code." (Dkt. No. 129 at 3). Plaintiff contends that "any delay is of Samsung's own making as it should have produced the circuit-level hardware schematics for the accused products earlier in discovery, but chose not to do so." (*Id.* at 4).

Defendants argue that Plaintiff simply "manufactures an excuse some eight months later for amending its infringement contentions" based on the argument that "a cherry-picked document Samsung produced on March 7, 2024 contains hardware schematics that are necessary for source code review." (Dkt. No. 135 at 1). Specifically, Defendants contend that "the March 7th document is just like multiple other documents Samsung produced more than eight months ago" on August 1, 2023. (*Id.*). Furthermore, Defendants dispute the premise that hardware schematics are necessary to understand source code as "[h]ardware schematics do not provide any information about the organization or operations of source code." (*Id.*).

In reply, Plaintiff argues that "it is undisputed that temperature is measured by hardware sensors in the accused phones" and thus "complete circuit level schematics are necessary to understand what the signals in the source code represent because the schematics allow one to perform a complete trace of the signals from the hardware temperature sensors to the application processor to determine which signals in the source code correspond to the correct temperature sensors." (Dkt. No. 138 at 1). Plaintiff's expert, Dr. Ricketts, states that the circuit-level diagram

4

produced on March 7, 2024 "allowed him for the first time to 'verify where the signals from the temperature sensor in the circuit diagrams were reflected in the source code' and understand 'what the relevant signals are in the source code.'" (*Id.* (quoting Dkt. No. 129-1, ¶ 19)). Plaintiff and its expert contend that the schematics produced by Defendants on August 1, 2023 were incomplete and insufficient to allow Plaintiff's expert to trace the correct hardware signals from the correct temperature sensors into the correct corresponding signals in the source code. (*Id.* at 2-3).

In sur-reply, Defendants note that "Polaris never raised any issues concerning circuit level schematics, or stated that it could not understand the source code without such schematics, when it was reviewing the source code in October 2023." (Dkt. No. 146 at 1). As such, Defendants contend that "Polaris's assertion that the schematics are necessary is nothing more than a smokescreen created by Polaris in an attempt to manufacture good cause." (*Id.* at 2). Furthermore, Defendants contend that "to the extent that Polaris maintains hardware schematics are necessary for understanding the source code, Samsung produced the allegedly necessary information in August 2023," which Defendants contend "contain the same type of information as those contained in SAMS362-2400385." (*Id.*).

The Court finds that Plaintiff's explanation for its delay should be afforded neutral weight in the good cause analysis. The dispute between the parties under this factor turns on whether Plaintiff had all of the information it needed to make the disputed source code amendments by August 1, 2023 or whether the March 7th document (SAMS362-2400385) was required. Plaintiff and its expert contend that the schematics produced on August 1, 2023 (referred to as Exhibits E1-E10) did not provide the necessary information, which was disclosed for the first time in the March 7th document. Plaintiff's expert, Dr. Ricketts, in a sworn declaration represents that the August 1,

2023 documents "uniformly omit vital information that is contained in SAMS362-2400385." (Dkt. No. 138-1). Specifically, Dr. Ricketts provides the following:

> For example, Ex. E1 (SAMS362-004153) does not show any connection to the accused port and connector. Further, the schematics entirely omit that a coil (port and connector) is electrically connected to the other electronics, including the Application Processor. This electrical connection is necessary for the proper identification of the accused functionalities, as the temperature sensor signal of the port and connector, WPC_THM, is needed to establish which signals the source code is interpreting at the application processor input. While there are mentions of the WPC_THM signal in the document, there is no indication of where this signal originated (i.e. the key technical disclosure of the sensor and its connection to the remaining circuit is absent). The remaining exhibits, Exhibits E2-10, suffer from similar deficiencies. For instance, Exhibit E2 (SAMS362-0044168) similarly omits the wireless power coil connector, which is again essential to tracing the signal from the hardware temperature sensors to the software. In addition to schematics missing the key connection to the temperature sensor, other schematics omit the connection to the Application Processor (the microprocessor that runs the software/source code). As another example, Exhibit E7 (SAMS362-0046181) shows the temperature sensor input but does not show any components it should connect to, such as the applications processor power management integration chip ("AP PMIC")

(Dkt. No. 138-1, ¶ 6).

Dr. Ricketts further describes that "[b]efore Samsung produced Interrogatory answers correlating documents to accused products, it was further unclear whether certain pages were even related to the same products." (*Id.*, ¶ 7). Dr. Ricketts notes that "Samsung only began identifying which products each schematic was for on March 12, 2024, in its Second Supplemental Response to Interrogatory No. 17," meaning that "[a]s of August of 2023, many of the schematics identified by Dr. Baker could not even be tied to accused products." (*Id.*). Specifically, Dr. Ricketts provides the following examples and explanation:

> Exhibit E1 describes that it is related to the "Bloom2 Project" on the front page, which appeared to be an internal codename, not an identification of any accused project. Further, page 4 of the same

> document shows, in the bottom right corner, that the schematics on this page are related to the "Z Flip2 project," not the Bloom2 Project, as indicated on the other pages of the same schematic. As another example, Exhibit E2 is titled "B4," yet also identifies the "Bloom2 Project" in the bottom right of the first page. From these page identifications, it was not even clear whether pages in the same document belonged to the same or different systems, whether these were all revisions of a single system, or whether these exhibits were even related to accused products. Thus, even though Exhibits E1-E10 are schematics like the one shown in Exhibit K that was produced on March 7, 2024 (SAMS362-2400385), Exhibits E1-10 lack crucial and clear information both linking them to accused products and providing the requisite detail to do a full trace the signals from the appropriate temperature sensors to the point where they are converted into software signals.

(*Id.*).

While Defendants state that Plaintiff "fails to point to anything specific in the schematics as necessary for understanding the source code," based on Dr. Ricketts' declaration the Court cannot agree. Defendants point to their own expert, Dr. Baker, who explains that the documents produced in August of 2023 contain the same type of information as that contained in the March 7th document. In essence, Defendants ask the Court to believe Dr. Baker over Dr. Ricketts. The Court has no reasoned basis on these facts to afford either expert more weight than the other. While Defendants' expert also provides reasoning in support of his conclusion that the August 2023 documents are enough to provide one with sufficient understanding of the source code, in view of Dr. Ricketts' own discussion, the Court is unconvinced that Plaintiff's explanation is simply a "smokescreen." Accordingly, the Court concludes that Plaintiff has provided at least a reasonable explanation for its delay in making these source code amendments and finds that this factor weighs neutrally in the good cause analysis.

### 2. *Importance of the Amendment*

Plaintiff argues that the added source code citations are important because they "provide[] important evidence regarding what source code in the accused products provides the infringing

Wireless PowerShare functionality and how the software in the accused products implements the accused Wireless PowerShare functionality." (Dkt. No. 129 at 11).

In response, Defendants contend the source code additions "are not important evidence of infringement because they do not support Polaris's contentions":

> none of the source code files that Polaris seeks to add indicates that any accused product measures (1) a change in temperature at a "port" or a "connector," (2) determines a "greater of the changes in temperature measured at the first device and the second device," (3) determines "if the greater of the changes in temperature is above a threshold," or (4) reduces a "current being provided from the first device to the second device" in response to "the greater of" the changes in temperature being above a threshold—***all required claim elements necessary to establish infringement***."

(Dkt. No. 135 at 2). Defendants note that Plaintiff now cites source code that Defendants contend prove the non-infringement of the accused products. (*Id.*).

In reply, Plaintiff contends that "whether Samsung disputes infringement is not relevant." (Dkt. No. 138 at 4). Furthermore, Plaintiff argues that "[t]he fact that the parties rely on similar source code citations with regard to infringement is indisputable evidence of its importance" as "[p]arties often rely on similar source code because that source code relates to the functionality accused of infringement." (*Id.*).

In sur-reply, Defendants repeat their argument that "the source code citations Polaris seeks to add are not important because they do not support Polaris's claim of infringement." (Dkt. No. 146 at 4).

The Court finds that this factor weighs in favor of granting Plaintiff leave to amend its contentions to include the disputed source code citations. The Court is not in the position to determine who is right as to whether these snippets of source code prove or disprove infringement—that is the exclusive province of the jury. In reaching its determination, the jury should have before it the relevant evidence regarding infringement. As such, the Court concludes

that the importance of the source code additions weighs in favor of granting Plaintiff leave to amend its contentions.

### 3. Potential Prejudice in Allowing the Amendment and Availability of a Continuance to Cure the Prejudice

Plaintiff contends that "Samsung is not prejudiced by the amendment caused by its own refusal to produce the circuit-level hardware schematics for its accused products" and that no continuance would be necessary. (Dkt. No. 129 at 4). Plaintiff notes that "Samsung has repeatedly asked Polaris to supplement its '456 Infringement Contentions to provide more specific allegations," and that is precisely what Plaintiff is attempting to do here. (*Id.* at 12).

With respect to prejudice, Defendants contend that "Polaris's new source code citations also represent a change in its infringement theory, citing code related to checking **battery** temperature—not changes in temperature measured at a 'port' or 'connector' as required by the claims and alleged in [] Polaris's original contentions." (Dkt. No. 135 at 2). Defendants state that they "will be prejudiced by having to defend against a new and previously undisclosed infringement theory at this late stage of the case." (*Id.*).

In reply, Plaintiff refutes the premise that any new infringement theory exists because "Polaris does not assert a theory regarding 'checking battery temperature,'" but rather "Polaris' contentions have always identified temperature sensors at the ports of the connectors, not the battery." (Dkt. No. 138 at 4). Plaintiff further contends that "[a]ny delay or prejudice is of Samsung's own making" because "Samsung chose not to produce complete circuit level diagrams until March 7, 2024, despite Polaris requesting these documents since June 20, 2023, in letters and Interrogatory Nos. 17 and 22, which were supplemented on March 12, 2024 with the relevant schematic." (*Id.* at 5). Finally, Plaintiff contends that "the amendment cannot be prejudicial as

9

Samsung has intimate knowledge of its own source code and already knew about the relevance of the cited source code" because Defendants cite "the same source code that [Plaintiff] relies on for [Defendants'] non-infringement in [Defendants'] interrogatory responses served before the motion." (*Id.*).

In sur-reply, Defendants argue that Plaintiff's statements "are contradicted by the fact that the very source code citations Polaris seeks to add are functions defined in sec_***battery***.c and sec_***battery***_thermal.c that check ***battery*** temperature rather than measuring a change in temperature at a 'port' or a 'connector,'" meaning that "Polaris is indeed changing its infringement theory." (Dkt. No. 146 at 5). Samsung contends that it "will be prejudiced by having to defend against a new and previously undisclosed infringement theory at this late stage of the case," including because "Samsung did not have an opportunity to evaluate and propose constructions for certain claim terms, including 'port' and 'connector' with this new theory in mind." (*Id.*).

The Court finds that these last two factors weigh in favor of granting Plaintiff leave to amend its contentions to include the disputed source code citations. Defendants' argument essentially boils down to the same issue it raised with respect to the importance of the amendments—i.e., Defendants disagree that Plaintiff's source code citations are pertinent to Plaintiff's infringement theory. While Defendants disagree that the source code citations actually support Plaintiff's infringement theory, that does make their addition to Plaintiff's contentions unfairly prejudicial. Plaintiff represents that it "does not assert a theory regarding 'checking battery temperature,'" and indeed it will not be able to because, as Plaintiff notes, its contentions "have always identified temperature sensors at ports of the connectors, not the battery." (Dkt. No. 138 at 4). As the Court stated with respect to the previous factor, the Court is not in a position to judge the parties' dispute as to whether the source code citations prove or disprove infringement. Finally,

10

the parties agree that allowing Plaintiff leave to amend its infringement contentions in this manner will not require any continuance of the current case schedule. Accordingly, the Court finds that that the potential prejudice and availability of a continuance factors favor granting Plaintiff leave.

### III.   CONCLUSION

Having found that (1) all good cause factors support Plaintiff's addition of the Galaxy S24, S24+, and S24 Ultra phones, and (2) Plaintiff's explanation for its delay in adding the source code citations weighs neutrally in the analysis and the remaining three factors favor granting leave to add the source code citations, the Court finds that Plaintiff's Motion should be and hereby is **GRANTED**. It is therefore **ORDERED** that Plaintiff has leave to serve its Second Supplemental Infringement Contentions for U.S. Patent No. 8,740,456.

**So ORDERED and SIGNED this 9th day of July, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE