**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| POLARIS POWERLED TECHNOLOGIES, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., AND SAMSUNG DISPLAY CO., LTD. <br><br> *Defendants*. | Case No. 2:22-cv-00469-JRG <br><br><br> **PUBLIC VERSION** |

**SAMSUNG'S MOTION FOR SUMMARY JUDGMENT OF
NON-INFRINGEMENT OF THE '456 PATENT
AND/OR PARTIAL SUMMARY JUDGMENT
LIMITING DIRECT INFRINGEMENT OF THE '456 PATENT**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................................................... 1

II.  STATEMENT OF THE ISSUES ............................................................................... 1

III.  STATEMENT OF UNDISPUTED MATERIAL FACTS .......................................... 1

IV.  LEGAL STANDARD ................................................................................................ 3

V.  ARGUMENT ............................................................................................................. 4

    A.  There is no genuine dispute that Samsung's Accused Devices do not meet the final element of Claim 9 of the '456 Patent. .............................................................. 4

        i.  There is no genuine dispute that Samsung's Accused Devices do not determine the value of a "change in temperature." ..................................... 5

        ii.  There is no genuine dispute that Samsung's Accused Devices do not take any action "in response to the greater of the change in temperature . . . being above a threshold." ............................................................................. 8

    B.  There is no genuine dispute that, at a maximum, only 3% of Accused Devices could have ever possibly practiced the claims, and only those Accused Devices can form the basis of a damages claim. ................................................................. 11

VI.  CONCLUSION ........................................................................................................ 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*,
  501 F.3d 1307 (2007)..................................................................................................... 14

*Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*,
  555 F.3d 984 (Fed. Cir. 2009) ...................................................................................... 12

*Candela Corp. v. Palomar Med. Techs., Inc.*,
  No. 9:06-CV-277, 2008 WL 11442020  (E.D. Tex. Sept. 5, 2008)......................................... 15

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...................................................................................................... 3, 4

*Centillion Data Systems, LLC v. Qwest Comms.*,
  631 F.3d 1279 (2011)..................................................................................................... 12

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
  363 F.3d 1263 (2004)................................................................................................ 14, 15

*Epps v. NCNB Nat'l Bank*,
  *838 F. Supp.* 296 (N.D. Tex. 1993), aff'd, 7 F.3d 44 (5th Cir. 1993) ...................................... 3

*Fontenot v. Upjohn Co.*,
  780 F.2d 1190 (5th Cir. 1986) ......................................................................................... 4

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321 (2010)..................................................................................................... 15

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
  870 F.3d 1320 (2017)..................................................................................................... 12

*ParkerVision, Inc. v. Qualcomm Inc.*,
  903 F.3d 1354 (Fed. Cir. 2018) ....................................................................................... 11

*TecSec, Inc. v. Adobe Inc.*,
  978 F.3d 1278 (Fed. Cir. 2020) ....................................................................................... 13

## I.    INTRODUCTION

Defendants Samsung Electronics Co., LTD., Samsung Electronics America, Inc., and Samsung Display Co., LTD. (collectively "Samsung") move for summary judgment under Rule 56 as to Polaris Powerled Technologies' ("Polaris") claims for infringement of the '456 Patent.

## II.    STATEMENT OF THE ISSUES

1. Whether summary judgment should be granted on non-infringement of the '456 Patent because the Accused Devices do not practice the final element of independent claim 9 for several reasons, and thus as a matter of law do not infringe any asserted claim of the '456 Patent.

2. Whether partial summary judgment should be granted of non-infringement of the '456 Patent because, at a maximum, only 3% of the Accused Devices have ever allegedly infringed by using Wireless PowerShare to connect to another accused Samsung product.

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Claim 9 of the '456 Patent, recites:

A device, comprising:

a connection coupling a first device and a second device;

a first port of the first device, wherein the first port is configured to receive a first connector of the connection;

first logic of the first device coupled to the first port, wherein the first logic is configured to determine a temperature of the connection at the first connector;

second logic of the first device, wherein the second logic is configured to provide current to the second device over the connection;

a second port of the second device, wherein the second port is configured to receive a second connector of the connection;

third logic of the second device coupled to the second port, wherein the third logic is configured to determine a temperature of the connection at the second connector;

wherein, in response to the greater of the change in temperature determined by the first logic and the change in temperature determined by the third logic being above a threshold, the second

1

logic is configured to reduce the current being provided from the first device to the second device.

2. Asserted claims 11 and 13 depend from claim 9.

3. Polaris accuses certain Samsung Galaxy mobile devices of infringing claims 9, 11, and 13 of the '456 Patent when they use the Wireless PowerShare feature to connect to another accused Samsung device (the "Samsung Accused Devices"). Ricketts Report ("Ex. B") ¶¶ 2, 116; Ricketts Deposition ("Ex. C"), 17:11-24.

4. Samsung's Wireless PowerShare may be used to wirelessly transmit power from one Samsung Accused Device to another Samsung Accused Device. POL_SS_00001268 -1275 ("Ex. D").

5. Polaris only accuses the Samsung Accused Devices of infringing claims 9, 11, and 13 of the '456 Patent when a Samsung Accused Device is using Wireless PowerShare for transmitting power to another Samsung Accused Device. Ex. B, ¶¶ 116, 191; Ex. C, 17:11-24.

6. Each of the Samsung Accused Devices measures a temperature value using a temperature sensor inside the device. Villasenor Rebuttal Report ("Ex. E"), ¶169.

7. In each of the Samsung Accused Devices, the software variable containing the measured temperature value is overwritten after each measurement cycle. Ex. E, ¶¶245-252; Ex. C, 146:17-148:4.

8. None of the Samsung Accused Devices determines the value of a change in temperature between two measured temperature values. Ex. E, ¶226.

9. None of the Samsung Accused Devices shares temperature information with any other Samsung Accused Devices during Wireless PowerShare. Ex. E, ¶256; Ex. C, 166:20-169:17.

10. Each of the Samsung Accused Devices shuts off power during Wireless

2

PowerShare when the measured temperature at that device is above a specified threshold. Ex. E, ¶232; Ex. C, 137:11-138:20.

11. In the Samsung Accused Devices, power is not shut off during Wireless PowerShare when the value of a change in temperature is above a specified threshold. Ex. E, ¶232; Ex. C, 62:2-8

12. In the Samsung Accused Devices, power is not shut off during Wireless PowerShare in response to the greater of a change in temperature determined by logic in the first device, on the one hand, and a change in temperature determined by logic in the second device, on the other, being above a threshold. Ex. E, ¶¶256-261; Ex. C, 155:25-161:9, 172:1-178:6.

13. At a maximum, only 3% of the Samsung Accused Devices have ever performed Wireless PowerShare with another Samsung Accused Device. Youngho Kim Deposition ("Ex. F" ) Exhibit 13 (SAMS362-2729376) ("Ex. G"); Becker Report ¶305 ("Ex. H").

14. Samsung Display ███████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████

## IV.     LEGAL STANDARD

Summary judgment allows the court to dispose of claims that do not warrant a time-consuming trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A Defendant is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Epps v. NCNB Nat'l Bank, 838 F. Supp*. 296, 298–99 (N.D. Tex. 1993), aff'd, 7 F.3d 44 (5th Cir. 1993). A defendant may also demonstrate entitlement to summary judgement by establishing that "there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. 317, 325 (1986). In either context, "[s]ummary judgment reinforces the

purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir. 1986) (footnote omitted).

## V.   ARGUMENT

### A. There is no genuine dispute that Samsung's Accused Devices do not meet the final element of Claim 9 of the '456 Patent.

The '456 Patent relates "particularly" to "adjusting delivery of current in a connection based on temperature." '456 Patent ("Ex. A"), 1:7-8. According to the patent, these adjustments are necessary because "an increase in current causes an increase in temperature in the connections and may result in catastrophic failure." *Id.*, 1:20-22. Claim 9 is the only asserted independent claim (asserted Claims 11 and 13 depend from Claim 9). The last element expressly addresses the patent's purpose of adjusting current based on temperature by requiring that the current be reduced when a very specific set of conditions are met. That element requires that:

> wherein, in response to the greater of the change in temperature determined by the first logic and the change in temperature determined by the third logic being above a threshold, the second logic is configured to reduce the current being provided from the first device to the second device.

The plain language of the claims is unambiguous: the "second logic" (which "is configured to provide current to the second device over the connection") will reduce the current when "the greater of the change in temperature determined by the first logic and the change in temperature determined by the third logic" is above a threshold. By the plain claim language, the value that must be compared to a threshold is "the greater of the change in temperature determined by the first logic and the change in temperature determined by the third logic." Thus, again by the plain claim language, there must be a value for the "change in temperature determined by the first logic" and a value for the "change in temperature determined by the third logic," and those two values must be compared to determine which is "the greater." The current

4

is reduced if the value of "the greater" change in temperature is "above a threshold."

There is no genuine dispute that none of the Samsung Accused Devices operate in this way. Samsung's approach is completely different and much more simple: each Accused Device measures its own temperature, compares that temperature measurement to a threshold, and turns off the current when the measured temperature exceeds the threshold. Ex. E, ¶232; Ex. C, 137:11-138:20. The Samsung Accused Devices thus do not satisfy several aspects of this claim element. None of the Samsung Accused Devices determine a "change in temperature." Ex. E, ¶226 None of the Samsung Accused Devices determine "the greater of the change in temperature." Ex. E, ¶256. None of the Samsung Accused Devices compare "the greater of the change in temperature" to a "threshold." Ex. E, ¶¶256-261. And none of the Samsung Accused Devices reduce the current when "the greater of the change in temperature" is "above a threshold." *Id.* There can be no genuine dispute that the Samsung Accused Devices do not meet the plain and ordinary meaning of this element of Claim 9. And because they do not meet Claim 9, they do not meet dependent claims 11 and 13 either.

### i.  There is no genuine dispute that Samsung's Accused Devices do not determine the value of a "change in temperature."

The final element of claim 9 of the '456 Patent requires identification of the value of "the greater of the change in temperature determined by the first logic and the change in temperature determined by the third logic." This necessarily requires identification of the value for the "change in temperature determined by the first logic" and identification of the value for the "change in temperature determined by the third logic." Earlier elements in claim 9 recite that the claimed "first logic" and "third logic" are "configured to determine a temperature". The final element requires a determination of the value of "the greater of the ***change in temperature*** determined by the first logic and the ***change in temperature*** determined by the third logic." The

claim language is explicit: the value of the "change in temperature," not a temperature measurement itself, must be compared to determine which change is "the greater."

The Court confirmed in its claim construction order this common sense understanding of the difference between the value of "a temperature" and the value of "a change in temperature." At claim construction, Samsung argued that this claim term was indefinite because a POSITA would not have been reasonably certain whether the plain meaning of the claim referred to: 1) "the 'temperature' determined by the first/third logic" previously recited in the claim; or 2) a "'change in temperature' that the first/third logic may be capable of determining, but is neither set out nor required by any specific claim language." *Markman* Order, Dkt. 171, at 28. The court held that the claim was not indefinite because "both the disclosure and the claim language show the language refers to the second of Samsung's possibilities." *Id.* In resolving this dispute, the Court concluded: "Thus, there is no reason a skilled artisan might think the disputed phrase refers only to determining temperatures as opposed to changes in temperatures." *Id.*, 29. As the Court explained, the plain and ordinary meaning of this term is not satisfied by determining the value of temperature measurements alone, and instead this claim element requires determining the value of "changes in temperature," so that "the greater" can be identified. *Id.*

There is no genuine dispute that each Samsung Accused Device measures its own temperature and does not determine the value of a change in temperature. In arguing that each Samsung Accused Device meets this element, Polaris's expert points only to source code that measures a temperature value. *See, e.g.,* Ex. B, ¶137 ("Each device ***measures temperature of the connector*** on a continuous basis (time).") There is no genuine dispute that the cited source code only measures the value of a temperature at a specific point in time.

In fact, there is no dispute that the Samsung Accused Devices are not capable of

6

determining the value of "a change in temperature." Polaris's expert Dr. Ricketts does not point to any source code that actually determines a "change in temperature" using multiple temperature measurements, because none exists. Samsung's source code makes clear that the variable containing the measured temperature value is overwritten each measurement cycle. Ex. E, ¶¶245-252 (describing that in Samsung's source code, the value holding the prior temperature "batt_temp" is overwritten after each measurement with a new value "value.intval"). So Samsung's Accused Devices only know a single temperature value each measurement cycle. *Id.*, ¶245. There is no dispute that Samsung's Accused Devices do not retain these temperature measurements for later use. Ex. C, 146:17-148:4. So the system is simply incapable of determining the value of "a change in temperature."

Desperately attempting to map the Samsung Accused Devices to the claims, Dr. Ricketts misleadingly argues that the Samsung Accused Devices implicitly measure changes in temperature, all the while ignoring that the claim language requires determining the value of a change in temperature so that "the greater of a change in temperature" can be compared to a threshold. Dr. Ricketts created a figure that allegedly shows how "[e]ach device measures a change in temperature as shown by the red arrow." Ex. B, ¶137. According to Dr. Ricketts, a Samsung Accused Device could measure the temperature as being "A," which is below the threshold, and then later measure the temperature as being "B," which is above the threshold, causing the Samsung Accused Device to end the PowerShare. Ex. B, ¶138. According to Dr. Ricketts, this is a form of "measuring a change in



temperature" because the recorded temperature has gone from below the threshold to above the threshold. *Id*; Ex. C, 146:23-147:4.

One can immediately appreciate that, by focusing on the fact that a change in temperature has occurred, Dr. Ricketts is straining the idea of "measuring" a change in temperature. But more fundamentally, he ignores what the claim unambiguously requires. The final element of claim 9 requires determination of the value of "the greater of the change in temperature determined by the first logic and the change in temperature determined by the third logic." This requires much more than "measuring" that there has been a change in temperature. This necessarily requires determination of the value for the "change in temperature determined by the first logic," determination of the value for the "change in temperature determined by the third logic" and comparing those two values to determine "the greater." As the Court's claim construction makes clear, the determination of "the greater" must be based on a comparison of the "change in temperature," not a mere measurement of temperature. *Markman* Order, Dkt. 171, at 28.

Because none of the Samsung Accused Devices determine the value of a "change in temperature" and none of the Samsung Accused Devices determine the value of "the greater of the change in temperature," they cannot satisfy the final element of claim 9 of the '456 Patent, and Samsung is entitled to summary judgment.

> **ii.  There is no genuine dispute that Samsung's Accused Devices do not take any action "in response to the greater of the change in temperature . . . being above a threshold."**

The final element of Claim 9 requires that "in response to the greater of the change in temperature . . . being above a threshold, . . . reduce the current. . ." As described above, the Samsung Accused Devices do not, and cannot, determine the value of the change in temperature, and they thus do not, and cannot, determine the value of "the greater of the change in temperature." Additionally, the Samsung Accused Devices do not, and cannot, take any action

***"in response to the greater of*** the change in temperature . . . being above a threshold." The Samsung Accused Devices never determine, nor do they have any information from which they could determine, the greater of the change in temperature between two devices.

There is no genuine dispute about how the Samsung Accused Devices operate. The Accused Devices will shut-off power transmission from a first device to a second device when a measured temperature at a single device is above a threshold. Ex. E, ¶232. This is not based on the value of a change in temperature, as explained in the prior section. And it is not the result of identifying the greater temperature change experienced between two devices: the temperature threshold comparison in the Samsung Accused Devices is done internally by each individual device itself. *Id.* No temperature information is passed between the two devices from which it would even be possible to determine "the greater of" any change in temperature. Ex. E, ¶¶256-261; Ex. C, 166:20-169:17.

Polaris does not dispute any of these facts. Instead, it glosses over this explicit claim language. Polaris's only argument is found in a single, unsubstantiated paragraph in its expert's report. In Paragraph 139, Dr. Ricketts refers to his diagram reproduced above and states: "For each Accused Product, whichever logic determines the change in temperature above a threshold M first would determine the greater of the change in temperature being above a threshold." Ex. B. Dr. Ricketts cites no evidence for this proposition. Moreover, this argument is inconsistent with the language of the claim, and it is incorrect as a matter of basic logic.

Polaris's argument relies on completely re-writing the language of this claim element. The claim element requires action "in response to the greater of the change in temperature determined by the first logic and the change in temperature determined by the third logic being above a threshold." It does not recite taking action in response to one temperature crossing a

9

threshold before another. Indeed, the specification gives an example consistent with the plain and ordinary meaning of the claim language of how the "greater" change could be determined, and it is not based on anything related to timing. The specification explains that "the change in temperature may be measured at both sides, and the largest of the two changes may be used." Ex. A, 7:30-32. Dr. Ricketts points to no example, and there is none, in which the claim language could be understood as determining "the greater of" two values by considering timing. The specification makes clear that the greater of these values is determined by figuring out which is "larger," not which is "first." Dr. Ricketts's argument ignores this claim language.

Moreover, Dr. Ricketts's argument is incorrect as a matter of basic logic. Fundamentally, determining which of two temperature values crosses a temperature threshold first provides no information about which value experienced the "greater" change in temperature. For example, consider two devices, each with a temperature threshold of 50°C. At an initial time, the first device is at a temperature of 40°C and the second device is at a temperature of 48°C. Ten seconds later, the first device is at a temperature of 49°C and the second device is at a temperature of 51°C. Under Dr. Ricketts's logic, the second device crossed the threshold first, so it experienced the "greater" change in temperature. But this is simply wrong. The first device experienced a 9°C change in temperature, which is greater than the 3°C change in temperature of the second device. *See also, e.g.* Ex. C, 155:25-161:9, 172:1-178:6 (discussing hypothetical examples in which power is shut off due to the lesser temperature changes, not the greater). Dr. Ricketts's statement is wrong as a matter of basic logic.

Polaris's position, resting entirely on a single assertion by Dr. Ricketts and supported by no underlying evidence, does not raise a genuine issue of material fact. Because none of the Samsung Accused Devices take any action "in response to the greater of the change in

10

temperature . . . being above a threshold," they cannot and do not satisfy the final element of Claim 9 of the '456 Patent, and Samsung is entitled to summary judgment.

**B. There is no genuine dispute that, at a maximum, only 3% of Accused Devices could have ever possibly practiced the claims, and only those Accused Devices can form the basis of a damages claim.**

Claim 9 recites a system that comprises two connected devices: a "first device" and a "second device." Consistent with this unambiguous claim language, Polaris asserts that infringement only occurs when two Samsung Accused Devices perform Wireless PowerShare between them. Ex. B, ¶¶ 2, 116, 191; Ex. C, 17:11-24. Samsung has produced evidence regarding how often this actually occurs, and Polaris has introduced no contrary evidence or argument. The evidence makes clear that between 1 and 3% of Samsung Accused Devices have ever performed Wireless PowerShare between them. Exs. G and H. This is thus the maximum number of Samsung Accused Devices that have ever even allegedly practiced the claim. Accordingly, partial summary judgment of no direct infringement is appropriate for the remaining 97% of Samsung Accused Devices that have not. Additionally, any alleged damages for indirect infringement must be limited to the 3% (at a maximum) of devices for which there is any alleged evidence of direct infringement, and exclude the 97% where there is no such evidence.

Importantly, Claim 9 is not a claim directed to an apparatus that merely has the capability for two devices to be coupled together. The claimed system must actually be created by including two devices with a "connection coupling" them, and there is no infringement without that coupling. *ParkerVision, Inc. v. Qualcomm Inc.*, 903 F.3d 1354, 1361–62 (Fed. Cir. 2018) ("where an apparatus needed to be altered in order to be 'configured' as claimed and there was no evidence of such alteration, it does not infringe those claims"); *see also, e.g. Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984 (Fed. Cir. 2009). Thus, without all of

11

a "first device," a "second device," and "a connection coupling" them together, this claim is not directly infringed. *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (2017) ("to use a claimed system, what must be 'used' is each element."); *Centillion Data Systems, LLC v. Qwest Comms.*, 631 F.3d 1279, 1286 (2011) ("Supplying the software for the customer to use is not the same as using the system."). Polaris's expert agrees, and thus there is no genuine dispute on this point. Ex. C, 17:11-24. ("Q: A person would have to use two Samsungs phones with wireless PowerShare to infringe the patent under your view, correct? A. So claim 9 of the '456 describes as connection coupling on the first device and second device. So one would need a first device and a second device.")

Samsung collects information regarding the extent to which Wireless Powershare is actually used with other Samsung Accused Devices. This data indicates that only a small percentage of Samsung customers use Wireless PowerShare to charge one Accused Device with another Accused Device. Weekly data about this Accused Device-to-Accused Device Wireless PowerShare use demonstrate a usage rate from 0.04% to 0.81% of devices. The weekly average is 0.09%. Usage date for a longer 12-month period (from work week 22 of 2023 through work week 21 of 2024) show usage rates from 1.1% to 3.0% of devices (depending on device model) used in this Accused Device-to-Accused Device manner. The annual average is 2.0%. Exs. G and H; Ex. I, ¶305. Giving Polaris the benefit of the doubt, the evidence thus demonstrates that, at a maximum, only 3% of Accused Devices perform the PowerShare function that Polaris argues is necessary to practice the claims. *See also, e.g.,* Ex. C, 24:22-25:3, 25:13-22, 26:20-27:2, 27:19-28:3, 29:5-25, 39:13-40:6 (Dr. Ricketts explaining that he has no evidence or analysis to dispute this quantification of alleged direct infringement). Again, and importantly for summary judgment, Polaris has no evidence to the contrary – there is no genuine dispute of this

12

material fact on the maximum extent of allegedly infringing use.

That evidence is also important for what it shows about the number of Samsung Accused Devices that have *never* used Wireless Powershare with another Samsung Accused Device. This data shows that at least 97% of Samsung Accused Devices have **not** engaged in Wireless PowerShare with another Samsung Accused Device. Thus, for the vast majority of Samsung Accused Devices, there is no evidence that they have ever included a "connection coupling" a first device and a second device in the manner that Polaris's argues is required to practice the claims. Polaris thus cannot satisfy its burden of proving direct infringement by these Samsung Accused Devices and is not entitled to damages based on alleged direct infringement for those devices. *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020) ("More generally, we have observed that there can be an award of no damages where 'none were proven.'"); *Id*. 1291-1292 ("[D]irect infringement occurs only after Acrobat [the Accused Product] is installed. Sales of Acrobat, therefore, cannot be a measure of damages for direct infringement by Adobe.") Because there is no genuine dispute that, at a maximum, only about 3% of Accused Devices have practiced Claim 9 under plaintiff's infringement theory, partial summary judgment of no direct infringement is appropriate on the 97% of Accused Devices that have not practiced the claims.

Additionally, Samsung is entitled to summary adjudication that plaintiff cannot recover damages from any alleged indirect infringement related the 97% of Accused Devices that never practiced the claims. In cases where, as here, an accused device does not "necessarily infringe" in all circumstances and indisputably has substantial non-infringing uses, a plaintiff must prove direct infringement to recover for inducing infringement. The Federal Circuit has unambiguously established this rule: a plaintiff "must prove specific instances of direct infringement or that the accused device necessarily infringes the patent in suit, in order to sustain the jury verdict of

induced infringement." *ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, 501 F.3d 1307, 1313-1314 (2007). Indeed, "hypothetical instances of direct infringement are insufficient to establish vicarious liability or indirect infringement." *Id.* This is because "[t]he mere sale of a product capable of substantial non-infringing uses does not constitute indirect infringement of a patent*."* *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1275 (2004). Here, the undisputed evidence showing how often Samsung Accused Devices allegedly infringed by using Wireless Powershare with another Samsung Accused Device may meet the threshold to show the alleged infringement necessary to assert a claim for induced infringement. But that same undisputed (and only) evidence makes clear that, at a maximum only 3% of Accused Devices ever directly infringed. All other uses are non-infringing.

Accordingly, plaintiff's potential recovery for allegedly inducing infringement must be limited to those instances in which actual infringement allegedly occurred. This necessarily follows from the general rule that a plaintiff must prove instances of direct infringement to recover for induced infringement: a defendant cannot be held liable for inducing infringement of devices that never infringed. Courts have repeatedly and consistently applied this requirement to limit available damages for indirect infringement. For example, the Federal Circuit in *Dynacore Holdings*, explained that "[a] defendant's liability for indirect infringement must relate to the identified instances of direct infringement. Plaintiffs who identify *individual* acts of direct infringement must restrict their theories of vicarious liability – and tie their claims for damages or injunctive relief – to *the identified act."* 363 F.3d 1274 (collecting cases). The plaintiff must "restrict its suit to liability stemming from that specific instance" of direct infringement. *Id.* at 1276. Courts in this district have ruled "in the event that both active inducement of infringement and substantial, non-infringing uses are demonstrated, [Plaintiff] will be limited to damages for

14

the specific acts of third-party infringement it is able to demonstrate." *Candela Corp. v. Palomar Med. Techs., Inc.,* No. 9:06-CV-277, 2008 WL 11442020, at *3 (E.D. Tex. Sept. 5, 2008).

As such, Plaintiff may not, as a matter of law, recover damages for indirect infringement by the 97% of Accused Devices that never practiced the asserted claims, even under Plaintiff's infringement theory. Samsung did not induce infringement by those devices because those devices never infringed. Allowing Plaintiff damages for inducing infringement by devices that never infringed would contravene Federal Circuit and related authority that limits infringement to proven acts of direct infringement. *See, e.g., Fujitsu Ltd. v. Netgear Inc.,* 620 F.3d 1321, 1329 and 1332 (2010) (Plaintiff "failed to establish a genuine issue of material fact regarding direct infringement for all but the four models with corresponding customer service records" so the evidence supported indirect infringement only "for the four accused models for which [Paintiff] showed evidence of direct infringement. We affirm summary judgment of no induced infringement for all other models.") In this case, Samsung is therefore entitled to summary adjudication that Plaintiff is limited to seeking damages for the 3% of Accused Devices that allegedly directly infringed and that Plaintiff may not seek damages for the 97% of Accused Devices that the undisputed evidence shows never directly infringed the asserted claims.

## VI.    CONCLUSION

Because there is no genuine dispute of material fact as to Samsung's non-infringement of the '456 Patent on multiple bases, the Court should grant summary judgment in favor of Samsung on these issues. Additionally, as to Samsung Display, no genuine dispute exists that Samsung Display ██████████████████████████████████████████████████████ ████████████████████████████████████████████ Ex. I. As such, Samsung Display is entitled to summary judgment of no infringement of the '456 patent for the additional reason that ██████████████████████

15

Dated: August 5, 2024

Respectfully submitted,

/s/ Ryan K. Yagura

Ryan K. Yagura (Tex. Bar No. 24075933)
ryagura@omm.com
Nicholas J. Whilt (Cal. Bar No. 247738)
nwhilt@omm.com
Benjamin Haber (Cal. Bar No. 287085)
bhaber@omm.com
Laura M. Burson (Tex. Bar. No. 24091995)
lburson@omm.com
**O'MELVENY & MYERS LLP**
400 S. Hope Street
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407

Timothy S. Durst (Tex. Bar No. 00786924)
tdurst@omm.com
Grant Ellis Gibson (Tex. Bar No. 24117859)
ggibson@omm.com
**O'MELVENY & MYERS LLP**
2501 North Harwood Street Suite 1700
Dallas, TX 75201
Telephone: (972) 360-1900
Facsimile: (972) 360-1901

Darin Snyder (Cal. Bar No. 136003)
dsnyder@omm.com
**O'MELVENY & MYERS LLP**
Two embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Miao Liu (DC Bar No. 1724050, *pro hac vice*)
mliu@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street NW
Washington, DC 20006
Telephone: (292) 383-5400
Facsimile: (202) 383-5414

Melissa Richard Smith (Tex. Bar No. 24001351)
melissa@gillamsmith.com

16

**GILLAM & SMITH, LLP**
303 South Washington Ave.
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

James Travis Underwood (Texas Bar No.
24102587)
travis@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
102 N. College, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Counsel for Defendants Samsung Electronics Co.,
Ltd. and Samsung Electronics America, Inc.*


*/s/ Neil Sirota*

Neil P. Sirota (NY Bar No. 2562155)
neil.sirota@bakerbotts.com
Eric J. Faragi (NY Bar No. 4300687)
eric.faragi@bakerbotts.com
**BAKER BOTTS L.L.P.**
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 408-2500
Facsimile: (212) 408-2501

Morgan Mayne (Tex. Bar No.  24084387)
morgan.mayne@bakerbotts.com
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

Mark Oda
mark.oda@bakerbotts.com (Cal. Bar No. 323768)
**BAKER BOTTS L.L.P.**
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

Lance Goodman (Tex. Bar No. 24132186)
lance.goodman@bakerbotts.com
**BAKER BOTTS L.L.P.**
401 S 1st Street, Suite 1330
Austin, Texas 78704
Telephone: (512) 322-2500
Facsimile: (512) 322-2501

Melissa Richard Smith (Tex. Bar No. 24001351)
melissa@gillamsmith.com
**GILLAM & SMITH, LLP**
303 South Washington Ave.
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

James Travis Underwood (Texas Bar No. 24102587)
travis@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
102 N. College, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Counsel for Defendant Samsung Display Co., Ltd.*

18

## CERTIFICATE OF SERVICE

I certify that the foregoing document is being served via the Court's CM/ECF system on

August 5, 2024, on all counsel of record who have consented to electronic service.

By: /s/ *Ryan K. Yagura*
Ryan K. Yagura

19