# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| POLARIS POWERLED TECHNOLOGIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG DISPLAY CO., LTD., <br><br> Defendants. | Civil Action No. 2:22-cv-00469-JRG <br><br><br> **JURY TRIAL DEMANDED** <br><br> ▆▆▆▆▆▆▆▆▆▆ <br><br> <u>**REDACTED VERSION**</u> |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE AND <br> <u>STRIKE TESTIMONY OF MR. CREDELLE (DKT. 190)</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   LEGAL STANDARD ................................................................................................... 1

III.  ARGUMENT ................................................................................................................. 2

   A.    Mr. Credelle's Technical Apportionment Opinions Are Firmly Rooted in Samsung's
Technical Documents And Are Not Ipse Dixit ................................................................. 2

      1.    Background of the Technology of the '521 Patent .......................................... 2

      2.    Mr. Credelle's Apportionment Is Based on Samsung's Technical Documents,
Samsung's 30(b)(6) Witness Testimony, and His Knowledge ................................. 3

      3.    Samsung's Arguments Are Meritless and Mischaracterize Mr. Credelle's
Apportionment Analysis ........................................................................................... 7

   B.    Mr. Credelle's Report and Polaris' Second Amended Infringement Contentions ("ICs")
Disclose the Same Theory .............................................................................................. 10

   C.    Polaris' Evidence Does Not Violate the Parties' Stipulation ........................................... 15

IV.   CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc.*,
  No. 2:21-CV-00034-JRG-RSP, 2021 WL 8441761 (E.D. Tex. Dec. 10, 2021) ........................ 15

*Biscotti Inc. v. Microsoft Corp.*,
  No. 2:13-CV-01015-JRG-RSP, 2017 WL 2267283 (E.D. Tex. May 24, 2017) ........................ 15

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) .................................................................................................................. 2

*Fenner Invs., Ltd. v. Hewlett–Packard Co.*,
  6:08–CV–273, 2010 WL 786606 (E.D. Tex. Feb. 26, 2010) ...................................................... 2

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018) ................................................................................................. 9

*Finjan, Inc. v. Cisco Sys. Inc.*,
  No. 17-cv-00072-BLF, 2020 WL 13180005 (N.D. Cal. Apr. 21, 2020) ..................................... 9

*GREE, Inc. v. Supercell Oy*,
  No. 2:19-CV-00070-JRG-RSP, 2020 WL 4057640 (E.D. Tex. July 20, 2020) ...................... 1, 8

*Huawei Techs. Co. v. Yiren Huang*,
  No. 4:17-CV-00893, 2019 WL 2395276 (E.D. Tex. June 6, 2019) ....................................... 1, 8

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed Cir. 2012) .................................................................................................... 10

*Maxell, Ltd. v. Apple Inc.*,
  No. 5:19-CV-00036-RWS, 2020 WL 8269548 (E.D. Tex. Nov. 11, 2020) ............................... 11

*Micro Chem., Inc. v. Lextron, Inc.*,
  317 F.3d 1387 (Fed. Cir. 2003) ................................................................................................. 8

*Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*,
  No. 6:11-cv-492-RWS-KNM, 2017 WL 4020591 (E.D. Tex. Sept. 13, 2017) .......................... 9

*Network-1 Techs., Inc. v. Hewlett-Packard Co.*,
  No. 6:13-cv-00072-RWS, 2017 WL 10222211 (E.D. Tex. Nov. 7, 2017) .................................. 9

*Orion IP, LLC v. Staples, Inc.*,
  407 F. Supp. 2d 815 (E.D. Tex. 2006) ...................................................................................... 2

*Skillz Platform Inc. v. AviaGames Inc.*,
  No. 21-CV-02436-BLF, 2023 WL 8438738 (N.D. Cal. Dec. 5, 2023) ............................... 7, 8, 9

*Stragent, LLC v. Intel Corp.*,
No. 6:11-CV-421, 2014 WL 1389304 (E.D. Tex. Mar. 6, 2014)................................................ 10

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283 (Fed. Cir. 2015) ................................................................................................ 1

**Rules**

Patent Rule 3-1(g) ................................................................................................................... 15

## TABLE OF ABBREVIATIONS

| Parties | |
|---|---|
| Plaintiff or Polaris | Polaris PowerLED Technologies, LLC |
| Defendants or Samsung | Collectively, Samsung Electronics America, Inc., Samsung Electronics Co., Ltd., Samsung Display Co., Ltd. |
| Samsung Display | Samsung Display Co., Ltd. |
| **Defined Terms** | |
| '521 Patent | U.S. Patent No. 7,259,521 |
| Credelle Rep | Expert Report of Thomas L. Credelle Relating to Infringement of U.S. Patent No. 7,259,521, dated June 21, 2024 |
| Credelle Dep. | Excerpt from the Deposition Transcript of Thomas L. Credelle, dated July 24, 2024 |
| Jeon Dep. | Excerpts from the Volume 2 Deposition Transcript of Jinyoung Jeon, dated May 25, 2024 |
| Cho Dep. | Excerpts from the Deposition Transcript of Beomseok Cho, dated May 21, 2024 |
| Park Dep. | Excerpts from the Deposition Transcript of Jongho Park, dated May 23, 2024 |
| Credelle Decl. | Declaration of Thomas L. Credelle, dated August 19, 2024 |
| ICs | Polaris' Second Amended Infringement Contentions, dated May 9, 2024 |

iv

**TABLE OF EXHIBITS**

Citations to numbered exhibits refer to exhibits attached to the declaration of Robert Kramer filed concurrently herewith, dated August 19, 2024 ("Kramer Decl.").

| Exhibit | Description |
|---------|-------------|
| 1 | U.S. Patent No. 7,259,521 |
| 2 | Excerpts of the Expert Report of Thomas L. Credelle Relating to Infringement of U.S. Patent No. 7,259,521, dated June 21, 2024 |
| 3 | ███████████████████████████████████████████████ |
| 4 | Samsung Website, "What is a Dynamic AMOLED Screen?" POL_SS_00024586 – POL_SS_00024596 |
| 5 | Excerpts from the Volume 2 Deposition Transcript of Jinyoung Jeon, dated May 25, 2024. |
| 6 | Excerpts from the Deposition Transcript of Beomseok Cho, dated May 21, 2024. |
| 7 | Excerpts from the Deposition Transcript of Jongho Park, dated May 23, 2024. |
| 8 | ███████████████████████████████████████████████ |
| 9 | Excerpt from the Deposition Transcript of Thomas L. Credelle, dated July 24, 2024. |
| 10 | Excerpts from Exhibit A to Polaris' Second Amended Infringement Contentions ("ICs"), dated May 9, 2024. |

v

## I.    INTRODUCTION

Samsung's motion lacks merit and should be denied. First, Samsung moves to strike the apportionment opinion of Mr. Credelle, Polaris' technical expert. Mr. Credelle's apportionment, which is based on Samsung's technical documents and the testimony of Samsung's 30(b)(6) witnesses, is sound and rooted in the facts of this case. Samsung merely disagrees with the underlying factual basis of Mr. Credelle's opinion, which is an issue of weight not admissibility. *Huawei Techs. Co. v. Yiren Huang*, No. 4:17-CV-00893, 2019 WL 2395276, at *3 (E.D. Tex. June 6, 2019) ("'As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned [to] that opinion rather than its admissibility and should be left to the jury's consideration.'") (citation omitted). This ground should thus be rejected.

Second, Samsung falsely alleges that Mr. Credelle's report contains a new infringement theory because it uses the word. ███████████████ In the accused products, the █████████████ ████████████████████████████████████████████████████████████For convenience and to avoid confusion, Mr. Credelle refers ███████████████████ ████████████████████ This is not a new theory as there are more than 20 pages in the infringement contentions discussing the analog video signal and its formation. This ground should thus be rejected.

## II.    LEGAL STANDARD

"Ultimately, 'the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court.'" *GREE, Inc. v. Supercell Oy*, No. 2:19-CV-00070-JRG-RSP, 2020 WL 4057640, at *3 (E.D. Tex. July 20, 2020) (citing *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow*

*Pharms., Inc.*, 509 U.S. 579, 595 (1993).

"The Patent Rules intend to strike a balance of providing fair notice to defendants without requiring unrealistic, overly factual contentions from plaintiffs, but the burden of notice the Patent Rules place on plaintiffs is intended to be a shield for defendants, not a sword." *Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 818 (E.D. Tex. 2006). "The scope of infringement contentions and expert reports are not, however, coextensive." *Fenner Invs., Ltd. v. Hewlett–Packard Co.*, 6:08–CV–273, 2010 WL 786606, at *2 (E.D. Tex. Feb. 26, 2010). "Infringement contentions need not disclose 'specific evidence nor do they require a plaintiff to prove its infringement case', whereas expert reports must include a complete statement of the expert's opinions, the basis and reasons for them, and any data or other information considered when forming them." *Id*. (citations omitted).

### III.    ARGUMENT

#### A.    Mr. Credelle's Technical Apportionment Opinions Are Firmly Rooted in Samsung's Technical Documents And Are Not Ipse Dixit

##### 1.    Background of the Technology of the '521 Patent

The claims of the '521 patent relate to AMOLED displays. Ex. 1, claims 1, 7. Specifically, Mr. Credelle explains that the '521 patent discloses that "variations in the power supply voltage will modulate the brightness of the AMOLED display, causing the display to flicker." Ex. 2, ¶ 57; Ex. 1, 1:25-26. Therefore, "[t]he direct relationship between the drive current and the power supply voltage renders AMOLED displays extremely sensitive to power supply voltage noise." Ex. 2, ¶ 57; Ex. 1, 1:32-35. "Thus, the brightness level of an AMOLED display will tend to drift with power supply voltage variations." Ex. 1, 1:37-39.

To address this problem, the '521 patent discloses an AMOLED system that reduces or eliminates the effect of power supply voltage variations. The '521 patent explains that "the AMOLED display system is thus made to be immune to power supply voltage variations and

provides display images that are free from undesired flickers and brightness variations." Ex. 1 3:64-67; Ex. 2, ¶ 64. Mr. Credelle further explains that "[t]he '521 patent addresses the problem of power supply voltage variations by utilizing a separate video driver circuit distinct from the AMOLED display that references the video drive signal to the power supply voltage instead of to ground, as illustrated by Figure 2." Ex. 1, 3:8-23; Ex. 2, ¶ 64. The result is that the pixel circuit can be isolated, or unaffected, by variations in the positive power supply voltage. Ex. 1, 1:5-10, 3:55-67; Ex. 2, ¶ 64.

### 2. Mr. Credelle's Apportionment Is Based on Samsung's Technical Documents, Samsung's 30(b)(6) Witness Testimony, and His Knowledge

Mr. Credelle's apportionment analysis is firmly rooted in Samsung's technical documents and Samsung's 30(b)(6) witness testimony. He reviewed Samsung's confidential and publicly available documents. Ex. 2, ¶¶ 308-309; Ex. 3, Ex. 4. Because they disclosed similar benefits of AMOLED displays including picture quality, color gamut, reduced power consumption, and blue light reduction, Mr. Credelle relied on Samsung's website for the following six broad categories of benefits of AMOLED technology.

**1. Exceptional Picture Quality**
AMOLED's high colour contrast of 13 million to 1 provides clear contrast between light and shade matching nature's palette almost perfectly.

**2. Reduced Power Consumption**
AMOLED displays consume significantly less power compared with LCD panels. AMOLED screens control each individual pixel meaning that they are only on when they need to be, reducing power consumption and saving your battery for more important things.

**3. Expansive Colour Gamut**
AMOLED screens have a colour gamut that is 1.3 times larger than those found in LCD screens for vibrant colours and perfect blacks.

**4. Higher Refresh Rates**
AMOLED screens have higher refresh rates (120Hz) compared with other display technologies which means you'll experience a faster, smoother, more responsive screen - no more glitchy gaming or blurry videos.

**5. Ultra-slim Design**
AMOLED displays are super thin because of the self-illuminating display whereas an LCD display requires another extra layer behind the display to install the illumination system. They can also bend to create subtle curves and flexible folds.

**6. Reduced Blue Light**
Samsung AMOLED displays reduce the harmful blue light wavelength to make it more comfortable for your eyes and to ensure a better night's sleep.

Ex. 4 at POL_SS_00024588.

Mr. Credelle determined that only two of the six categories—picture quality and color gamut—were directly affected by Samsung's infringement of the '521 patent. Ex. 2, ¶ 316. With

3

respect to picture quality, Samsung's 30(b)(6) witness, █████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████

Mr. Credelle also considered that Samsung's counsel stated on the record that "I can represent that Samsung Display is not going to be relying on a non-infringing alternative in connection with its damages analysis, with respect to the '521 Patent." Ex. 7 (Park Dep.), 92:14-18; Ex. 2, ¶ 298. Samsung's admission of no non-infringing alternatives to the '521 patent is consistent with ███████████████████████████████████████████████████ ████████████████████████████ Mr. Credelle thus concluded that the invention of the '521 patent, which minimizes or eliminates flicker by removing voltage variations, is necessary for creating a commercially acceptable product with an AMOLED display. Ex. 2, ¶¶ 305-307, 311.

Then, Mr. Credelle determined that the claimed invention of the '521 patent provides "brightness uniformity" (*i.e.*, no flickering) to Samsung's AMOLED displays making them commercially acceptable. *Id*. Citing to Section X.A.4[1] of his report, Mr. Credelle explains that

███████████████████████████████████████████████████████████

███████████████████████ Ex. 2, ¶ 311. ██████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

---

[1] There is a typographical error in the report where it says, "*See supra* Section IX.A.4." Ex. 2, ¶¶ 310-11, 313. The citation obviously refers to Section X (not IX), which is the only section in the report that has an "A.4" section.



*Id*. Based on this technical analysis, Mr. Credelle determined that the benefit of brightness uniformity without flicker provided by the '521 patent is an important benefit allowing Samsung's AMOLED screens to be commercially acceptable. Ex. 2 at ¶ 316.

Mr. Credelle also analyzed the improved contrast ratio from infringement of the '521 patent in relation to picture quality. ████████████████████

████████████████████████████████

████████████████████████████████

███████ ██ █ █ ███████████ ██████ ██ █ ███████ ████

████████████████████████████████

████████████████████████████████

█████████████████████████

Therefore, because ████████████████████████████

████████████████████████████████

██████████████ picture quality was ranked of high importance by Mr. Credelle. Ex. 2 at ¶¶ 305-307, 316; Ex. 6 (Cho Dep.), 35:8-16. ████████████████

████████████████████████████████

█

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

To determine the contribution of the patented technology, Mr. Credelle calculated the "'521 impact" by multiplying the "Impact of the '521 patent" on a 1-5 scale by the "Importance to product" (assigning a value of 1 for low, 2 for medium, and 3 for high important) for each of the 6 categories. *Id*. The "Max impact" was calculated by multiplying a 5 for the highest potential "Impact of '521 patent" score by "Importance to product" for each category. *Id*. The sum of the "'521 impact" scores was then divided by the sum of the "Max impact" scores for all 6 categories to obtain a numerical score of 23% (*i.e.*, 13/55). *Id*. By dividing the '521 impact by the maximum

6

total impact score, Mr. Credelle determined the incremental value of the patented technology:

| Attribute | Impact | Impact of '521 patent (0=no impact 5=high impact) | Importance to product (H=3, M=2, L=1) | Max impact | '521 impact |
|---|---|---|---|---|---|
| 1a. Picture quality-contrast ratio<br>1b. Picture quality-uniformity | Direct | 3 | HIGH | 15 | 9 |
| 2. Reduced power consumption | Indirect | 0 | MEDIUM | 10 | 0 |
| 3. Expansive color gamut | Direct | 2 | MEDIUM | 10 | 4 |
| 4. Higher refresh rates | Indirect | 0 | MEDIUM | 10 | 0 |
| 5. Ultra Slim Design | Indirect | 0 | LOW | 5 | 0 |
| 6. Reduced Blue Light | Indirect | 0 | LOW | 5 | 0 |
| | | | Totals | 55 | 13 |

*Id.,* ¶¶ 316-317.

### 3. Samsung's Arguments Are Meritless and Mischaracterize Mr. Credelle's Apportionment Analysis

Samsung's allegations that Mr. Credelle's apportionment analysis is *ipse dixit*, subjective, and relies "solely on his experience and alleged expertise" are plainly false. Dkt. 190, 6-7. As discussed in the preceding section, while permissibly applying his experience, Mr. Credelle relied on Samsung's technical documents and 30(b)(6) witnesses as evidence in forming his opinions on the value of the claimed '521 inventions in the accused products. Mr. Credelle's opinions are thus tied to the facts and evidence in this case and should be admitted.

Samsung also argues that Mr. Credelle's list of AMOLED benefits was not exhaustive. Dkt. 190, 8-9. There is no such requirement under the law. Moreover, several of the attributes that Samsung argues were improperly omitted actually fall under the attributes Mr. Credelle relied on. For example, "foldability" and "lightness," fall under "ultra slim design," and "heat dissipation" falls under "reduced power consumption." Ex. 9 (Credelle Dep.), 213:6-12 ("If you have reduced power consumption, you have less heat. So it is included in that regard."); Ex. 4.

Courts have rejected the same argument that Samsung is making here. In *Skillz Platform*,

7

the defendant argued that it was improper for the plaintiff's expert to rely on defendant's documents to identify five key features "when other documents identify different numbers of features." *Skillz Platform Inc. v. AviaGames Inc.*, No. 21-CV-02436-BLF, 2023 WL 8438738, at *7 (N.D. Cal. Dec. 5, 2023). The Court rejected defendant's argument because, "ultimately, [Defendant's] argument is a dispute over the factual underpinnings of [the Plaintiff's expert's] analysis, which go to the opinion's weight, not admissibility." *Id*.

The Court should similarly reject Samsung's arguments here. Samsung's primary complaint is that it disagrees with the factual bases of Mr. Credelle's opinions, which goes to weight ***not*** admissibility and can be dealt with on cross-examination. *Huawei*, 2019 WL 2395276, at *3 ("'As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned [to] that opinion rather than its admissibility and should be left to the jury's consideration.'") (citation omitted). The Federal Circuit has warned that it is not the district court's role to decide such underlying factual disputes. *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed. Cir. 2003) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."). "[T]he question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court.'" *GREE*, 2020 WL 4057640, at *3 (citation omitted).

Samsung's argument that Mr. Credelle should have considered its phones sold from 2007-2012 ████████████ as an "alternative" should be rejected out of hand. Dkt. 190, 11-12. ***First***, Samsung cannot now argue that Mr. Credelle failed to consider non-infringing alternatives when Samsung's own counsel prevented Polaris from asking its 30(b)(6) witness questions about non-infringing alternatives by clearly and unequivocally representing, on the record, that Samsung is not asserting any non-infringing alternatives for the '521 patent in this case.



 ***Second***, Samsung ***never*** states that the 2007-2012 phones with AMOLED displays are actually non-infringing. It simply states the phones ███████████ (*i.e.*, the name of the current infringing implementation), implying that they still infringed but the infringing feature had a different name at that time. ***Third***, Samsung's offers *no opinion* from its technical expert that the 2007-2012 phones do not infringe. ***Fourth***, Samsung refused to produce discovery regarding the operation of these alleged 2007-2012 phones thereby preventing any actual investigation into the truth of their allegations. Therefore, Mr. Credelle had no reason to address these products, which are outside of the damages period, because Samsung is ***not*** asserting that they are noninfringing alternatives and has failed to provide discovery on them.

Moreover, Mr. Credelle's methodology of feature-based apportionment has been consistently approved by courts. *Finjan, Inc. v. Blue Coat Sys., Inc.,* 879 F.3d 1299, 1312-13 (Fed. Cir. 2018) (affirming methodology of apportioning based on the relative value of patented and non-patented function based on categories from an accused infringer's own feature list); *Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:11-cv-492-RWS-KNM, 2017 WL 4020591, at *6-7 (E.D. Tex. Sept. 13, 2017) *objections overruled sub nom., Network-1 Techs., Inc. v. Hewlett-Packard Co.,* No. 6:13-cv-00072-RWS, 2017 WL 10222211 (E.D. Tex. Nov. 7, 2017) (denying *Daubert* motion against technical expert's feature-based apportionment of the five main features); *Finjan, Inc. v. Cisco Sys. Inc.,* No. 17-cv-00072-BLF, 2020 WL 13180005, at *9 (N.D. Cal. Apr. 21, 2020) (finding feature based apportionment proper where expert opined that a product had eight features of equal value); *Skillz Platform*, 2023 WL 8438738, at *7–8 (denying motion *in limine* where expert's apportionment used five key features of equal value).

9

In contrast, Samsung's cited cases are inapposite. In *Stragent*, the court struck a technical apportionment opinion from an expert who admitted "I am not, nor do I hold myself out to be, a technical expert in these technologies." *Stragent, LLC v. Intel Corp.*, No. 6:11-CV-421, 2014 WL 1389304, at *4 (E.D. Tex. Mar. 6, 2014), *order clarified*, No. 6:11-CV-421, 2014 WL 12611339 (E.D. Tex. Mar. 12, 2014). That is not the case here where it is undisputed that Mr. Credelle is a qualified technical expert. In *LaserDynamics*, the Federal Circuit found that the damages expert's use of the entire market value rule at trial was erroneous because the expert "never conducted any market studies or consumer surveys to ascertain whether the demand for a laptop computer is driven by the patented technology," and his apportionment lacked any economic basis. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 69 (Fed Cir. 2012). Unlike the *LaserDynamics* expert, who was a damages (not technical) expert and had no technical evidence to rely on, Mr. Credelle is a technical expert who relied on the Defendants' technical documents and 30(b)(6) witnesses to do a technical apportionment to determine the incremental benefits attributable to the patented features. Therefore, the opinions in Section XIV of Mr. Credelle's report are admissible, and Samsung's motion should be denied.

**B.    Mr. Credelle's Report and Polaris' Second Amended Infringement Contentions ("ICs") Disclose the Same Theory**

Samsung argues that the analog video signal, which Mr. Credelle refers to as ███████ in his report, was not disclosed in Polaris' ICs. This argument is meritless. ███████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

10

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████

The fact that Mr. Credelle's report used a shorthand, ███████████████ for the *same* analog video signals discussed in the ICs does not mean that Samsung was not on notice of Polaris' infringement theory. Credelle Decl., ¶ 23. There was obviously no confusion as Samsung understood that ████████████ referred to the analog video signal. Dkt. 190, 13. There is no requirement that Mr. Credelle use the same words as the ICs. On similar facts where the word choices differed between the infringement contentions and the expert report, this Court has denied motions to strike.

> ***[Defendant] has failed to show that there was no notice of "sensor binning"*** in [Plaintiff's] infringement contentions. [Defendant's] argument largely relies on the fact that the ***[infringement contentions] never uses the words "sensor binning" and "Slo-Mo."*** But [Plaintiff] includes the term "binning" multiple times in its [infringement contentions], and likewise discusses "slow-motion" video formats multiple times. This demonstrates that [Defendant] had some awareness that these concepts were at issue. ***[Plaintiff] is not required to limit its evidentiary discussion of its infringement contentions to only exact phrases used in the [infringement contentions]***.

*Maxell, Ltd. v. Apple Inc.*, No. 5:19-CV-00036-RWS, 2020 WL 8269548, at *19 (E.D. Tex. Nov. 11, 2020) (emphasis added) (internal citations omitted). As in *Maxell*, the Court should deny Samsung's motion, which is predicated on word choice rather than on lack of notice.

Samsung's other arguments are equally meritless. ***First***, Samsung's motion attempts to confuse the issues by failing to mention what limitation is being addressed. ████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████



████████████████████████ Similarly, for the representative IT products, both Mr. Credelle's expert report and the ICs state that the ███████████████████████████████████ Ex. 2, ¶ 272; Ex. 10, 28-29. Therefore, Mr. Credelle's expert report and the ICs identify the exact same ████████████ as being received by the video driver in this claim limitation.

**Second**, the discussion of ████████ which the parties agree refers to the analog video signal *after* the digital to analog conversion, is discussed because it is a component of the "video drive signal," which is an entirely *different* limitation from the "video signal" that is received by the video driver. Ex. 2, ¶¶ 193-194, 228-229, 280. The "video signal" is what is received by the "video driver" whereas the "video drive signal" refers to what is generated by the "video driver." Ex. 1, cl. 1. Samsung attempts to confuse the discussion of "video drive signal" with "video signal." Samsung's motion alleges that Mr. Credelle refers to ████████ as the "video signal" in "a video driver receiving the video signal," which is plainly false. Rather, Mr. Credelle's report discusses how the digital video signal is converted to an analog signal (*i.e.,* ████████ and used in generating the "*video drive signal*." Ex. 2, ¶¶ 186-94, 207, 222-29, 243, 282-83, 290-91. The ████████████████████ is necessarily part of the "video drive signal" because, if it was not, no video content would reach the AMOLED display resulting in no video content being displayed. Ex. 2, ¶¶ 49-51. However, the "video drive signal" is different from the "video signal" limitation that Samsung focuses on in its motion. Ex. 10 (ICs) at 16, 28-29; Ex. 2 (Credelle Rpt.),

12

¶¶ 186, 222, 272.

*Third*, Samsung's specific allegations in its motion are plainly false from a simple reading of Polaris' ICs. Referring to ███████████████████████ ██████████████████████ Samsung makes the demonstrably false allegation that "None of this is set forth in Polaris' Infringement Contentions." Dkt. 190, 14 (emphasis removed). There are over 20 pages in the ICs discussing these exact details for the two representative products charted. Ex. 10, 16-39. An excerpt from the ICs for the S22 product illustrates this.



Ex. 10 at 16-25 (emphasis added).

Therefore, Samsung's motion should be denied because the allegations regarding the ICs are false. Polaris' ICs discuss the role of the ███████████████████████

13

in generating the "video drive signal." *Id.* at 16-23 (S22), 30-38 (IT products). Polaris' ICs also explicitly discuss ███████████████ in direct contradiction of Samsung's allegation that the ICs ignore the terms ███████████████ *Id.* at 18, 21-25, 32, 35-36, 38.

Further, both Polaris' ICs and Mr. Credelle's report state that the "video drive signal" includes the analog video signal referenced to ████████ Polaris' ICs state that the analog video signal ████████████ is referenced to the ████████ in generating the "video drive signal" and show the referencing calculation as ███████████████ "



Ex. 10, 22-25. This is the ***same equation for the "video drive signal" as in Mr. Credelle's report*** for both products charted in the ICs.[2]

███████████████████████████
███████████████████████████
███████████████████████████
███████████████████████████

Ex. 2, ¶¶ 194, 207 (S22) (annotations added); *see also* ¶¶ 290-91 (IT products)[3]

---

[2] ███████████████████████████
███████████████████████████
███████████████████████ Dkt. 196, 13 n.15.

[3] Samsung's footnote incorrectly alleges that, for claim 2, Polaris' ICs point to a digital video signal. The ICs explain for both representative products that the ███████████████
███████████████████ Ex. 10 (ICs), 25, 38. Then, the ICs state that ███████████████████████████
███████████████████████████
███████████████████████████
███████████████ *Id.* at 44.

14

*Fourth*, Samsung complains that there is a single diagram on page 121 of Mr. Credelle's report that was not in the ICs. This diagram merely provides background technical information relating to how voltages are manipulated, which is not a claim limitation. Experts are allowed to "add[] additional  details in an expert report." *Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc.*, No. 2:21-CV-00034-JRG-RSP, 2021 WL 8441761, at *4 (E.D. Tex. Dec. 10, 2021) (denying motion to strike and holding that an "[expert] is not precluded from adding additional details in an expert report, which is what [the expert] did.").

*Fifth*, the sole case cited by Samsung is inapposite. *Biscotti* involved the plaintiff's failure to comply with Patent Rule 3-1(g), which requires the identification of source code that allegedly satisfies software limitations. *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-CV-01015-JRG-RSP, 2017 WL 2267283, at *3 (E.D. Tex. May 24, 2017). That is not the case here.

Therefore, Samsung's motion should be denied because Polaris' ICs disclose the same infringement theory as Mr. Credelle's report despite expressing that theory in different words.

### C.    Polaris' Evidence Does Not Violate the Parties' Stipulation

███████████████████████████████████

███████████████████████████████████

█ It is undisputed that Mr. Credelle's report only relies on evidence for these three products in his infringement analysis, which begins at paragraph 178. Ex. 2, ¶ 178. Samsung is pointing to paragraphs 89 and 133-138 in the technical background section, and Mr. Credelle's testimony will help the jury understand the technology. Because the alleged documents are not used in the infringement analysis, Samsung's motion should be denied.

### IV.    CONCLUSION

For the foregoing reasons, the Court should deny Samsung's Motion to Exclude and Strike Testimony of Mr. Credelle.

August 19, 2024

Respectfully submitted,

/s/ *Robert F. Kramer*

Robert F. Kramer
CA Bar No. 181706 (Admitted E.D. Texas)
rkramer@krameralberti.com
David Alberti
CA Bar No. 220265 (Admitted E.D. Texas)
dalberti@krameralberti.com
Sal Lim
CA Bar No. 211836 (Admitted E.D. Texas)
slim@krameralberti.com
Russell S. Tonkovich
CA Bar No. 233280 (Admitted E.D. Texas)
rtonkovich@krameralberti.com
Robert Mattson
Virginia Bar No. 43568 (*pro hac vice*)
rmattson@krameralberti.com
James P. Barabas
NJ Bar No. 018262000 (*pro hac vice*)
jbarabas@krameralberti.com
Andrew Hamill
CA Bar No. 251156 (Admitted E.D. Texas)
ahamill@krameralberti.com
Jeremiah A. Armstrong
CA Bar No. 253705 (*pro hac vice*)
jarmstrong@krameralberti.com
Aidan Brewster
CA Bar No. 319691 (*pro hac vice*)
abrewster@krameralberti.com
Ryan Dooley
CA Bar No. 321645 (*pro hac vice*)
rdooley@krameralberti.com
**KRAMER ALBERTI LIM &
TONKOVICH LLP**
577 Airport Blvd., Ste 250
Burlingame, CA 94010
Telephone: (650) 825-4300
Facsimile: (650) 460-8443

Nicole Glauser
Texas Bar No. 24050694
nglauser@krameralberti.com
**KRAMER ALBERTI LIM
& TONKOVICH LLP**
500 W 2nd Street, Suite 1900
Austin, TX 78701
Telephone: (737) 256-7784

16

Facsimile: (650) 460-8443

Deron R. Dacus
Texas Bar No. 00790533
ddacus@dacusfirm.com
**THE DACUS FIRM, P.C**.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903) 705-7233
Facsimile: (903) 581-2543

*Attorneys for Plaintiff*
*Polaris PowerLED Technologies, LLC*

## CERTIFICATE OF SERVICE

I certify that the foregoing document is being served via the Court's CM/ECF system on August 19, 2024, on all counsel of record who have consented to electronic service, and all confidential versions of this filing will be served upon all counsel of record by electronic mail.

*/s/ Robert F. Kramer*
Robert F. Kramer

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5(a)(7), the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Dkt. 50) entered in this case on June 28, 2023

*/s/ Robert F. Kramer*
Robert F. Kramer

17